## Wolford, et al. v. Smith.

(Decided January 23, 1912.)

### Appeal from Pike Circuit Court.

Adverse Possession—Parol Purchase.—A, who owned a remainder interest in land, placed B in possession of it under a parol purchase, but, before the expiration of the life tenancy, the life tenant and the remainderman sold the land: Held, that the possession

of B under his entry made by the consent of the remainderman did not have the effect of putting him in the adverse possession of the land, as the remainderman had no right to or interest in the land during the continuance of the life tenancy.

ROSCOE VANOVER and STRATTON & STEPHENSON for appellants.

J. M. BOWLING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In 1876 Liviniah Smith obtained a divorce from Johnathan Smith. In the judgment Liviniah Smith was adjudged:

"The possession and exclusive use of the lands upon which she resides for the support of herself and children as long as she may live and be unmarried; if she should marry again, then her right to the possession shall cease."

The land mentioned in this judgment contained sixty acres, more or less. At the time this judgment was rendered, the parties had three children living, Joseph F., Julia and Aaron Smith. This controversy is between Aaron Smith, who is the appellee, and the appellants, E. S. Wolford and D. W. Dotson, and involves the ownership of a part of the tract of land above mentioned.

It appears that in 1902 Johnathan Smith and Liviniah Smith and Joseph F. Smith conveyed to the appellant, Wolford and Dotson, in consideration of $350, the land given for life to Liviniah Smith by the judgment. In 1907 Wolford and Dotson conveyed to the Alma Coal Company the mineral rights in the land, and in 1910 the coal company brought a suit against Wolford and Dotson for a specific performance of the contract, making Aaron Smith a party defendant upon the ground that he was interfering with its right to the use and enjoyment of the land. In answer to this suit, Aaron Smith set up that in 1893 he bought the land in controversy from his father, Johnathan Smith for $25; that his father executed to him a deed, but afterwards and before the deed was put to record, secured possession of the same and destroyed it; that his father marked off the boundary purchased and placed him in the possession of it, and that continuously from that time he has been in the peaceable, open and adverse use and possession of the land, and had cleared up about twelve acres, fenced practically the en-

tire boundary, erected a house on it, and set out a small orchard. He averred that the deed made by Johnathan Smith, Liviniah Smith and Joseph F. Smith was champertous, as it was made at a time when he was in actual possession of the land, and that when the deed was made the grantee in the deed, Wolford, knew that he was the owner and in the occupancy of the land. He asked that the deed made by Johnathan, Liviniah and Joseph F. Smith be concelled, and he be quieted in the possession of his land.

To this answer a reply was filed, controverting its allegations, and setting up affirmatively that the tract of land conveyed to them was the same land upon which Liviniah, who was yet living and unmarried, resided and in which she had a life estate under the judgment. They further averred that when they bought the land, Johnathan and Liviniah and Joseph F. Smith were in the possession of the same, and Aaron Smith resided in the State of Virginia and was not in the possession of any part of the land. That they were purchasers for a valuable consideration, without notice of any claim of Aaron Smith.

Upon hearing the case, the lower court adjudged that when Wolford and Dotson became the purchasers of the land in 1902, A. W. Smith was in the actual and adverse possession and occupancy of the same, and that the conveyance to them by Johnathan Smith and his divorced wife was champertous. He further adjudged that Aaron Smith was the owner of the land and entitled to be quieted in his possession. From this judgment this appeal is prosecuted.

The evidence on behalf of Aaron Smith was that in 1893 his father, Johnathan Smith, divided the home farm, the one he owned when the judgment in the divorce proceedings was instituted, and which was given to his wife for life by the judgment, between him and his brother, Joseph F. Smith, and marked off the boundary of the land that he should have and placed him in the possession of it, and that he had remained in the possession of it from that time until he gave his testimony in 1910. That he put a little house on the land, worth probably one hundred dollars, enclosed a part of it by a fence, set out a small orchard, and cultivated it from year to year. There is also some evidence that in 1893 his father had a deed written, conveying to him this land in consideration of twenty-five dollars, but that after the deed was

written and before it was acknowledged a question came up about the location of a road, and the deed was never signed or acknowledged by the grantor and of course never put to record.

The evidence for the appellants tends to show that after the divorce proceedings, Johnathan Smith and his divorced wife, as well as Aaron Smith and his brother, Joseph F. Smith, continued to reside on this land until Johnathan Smith died about 1907. That Liviniah Smith was living and unmarried when the evidence in the case was taken. That Johnathan Smith proposed to sell the land in controversy to Wolford and Dotson and at the time they bought it, both he and his wife and Joseph F. Smith were living on the land, Aaron Smith at that time being in the State of Virginia. That they knew that Aaron Smith had lived on the land for a number of years in the same way that his brother, father and mother had, but they had no information of any kind that his father had ever attempted to sell to or place him in the possession of any part of the land, or that he set up claim to be the owner of any part of it.

It will be kept in mind that at the time Aaron Smith claims that he purchased this land from his father, and was put in the possession of it by him that his father did not have any interest in the land except a remainder interest. That the life interest in the land was owned by his mother. This being so, his father could not have sold to him any present interest in the land or have placed him in the present possession of it, as his father had no present interest in or to the land at that time. As there is no pretense that Aaron Smith in 1902, or at any time, was holding the land adversely against his mother or that she placed him in possession of it, it is manifest that he could not have been holding it adversely to any person. It further appears from the record that after the divorce proceedings, Johnathan Smith and his divorced wife, as well as the children, continued to live on this land practically as they had done before, the old people living separately, but with their children, Aaron and Joseph F. Smith. What became of Julia Smith does not appear in the record. Aaron Smith was in the possession of a part of the land, and so was Joseph F. Smith in the possession of a part of it, and it is fair to assume that they were taking care of their parents.

There is no doubt that at the time the deed was made to Wolford and Dotson, the title to the land was in John-

athan and Liviniah Smith, she having a life estate under the divorce judgment, and he a remainder interest. Owning the land in this way, they of course had the right to convey it, and their deed in 1902 passed to the grantees, Wolford and Dotson, a good title. If we should assume as counsel for Aaron Smith ask us to do, that Aaron Smith was in the adverse possession of the land from 1893, his adverse holding in 1902 had only been for nine years, and, when the deed was made by the legal title owners, Johnathan and Liviniah Smith, to Wolford and Dotson in 1902, it terminated the possession of Aaron Smith that he claimed had been adverse from 1893. After 1902, if he held adversely against any person, it was necessarily against the legal title owners, Wolford and Dotson. It is admitted that they knew he lived on the land after they purchased it, and they testified that they had no objection to his living there as they cared nothing about the use of the land—only the timber and mineral rights were valuable and they were not being disturbed by him—so they made no objection to his remaining on the land after their purchase. Aaron Smith's whole case is grounded upon the theory that he had been in the possession of the land a sufficient length of time to invest him with a promissory title that would defeat the claim of Wolford and Dotson. As we have frequently ruled, an adverse holding must continue for fifteen years, and, as Aaron Smith did not hold adversely for this length of time, or for any time, his claim of adverse possession is of no avail.

Nor can the claim of Aaron Smith that the sale to Wolford and Dotson was champertous be maintained, as the champerty statute, is only available when there is an attempted sale of land that is in the adverse possession of another.

Wherefore, the judgment is reversed, with directions for proceedings in conformity with this opinion.