## Shaver et al. v. Ellis et al.

(Decided December 14, 1928.)

## Appeal from Ohio Circuit Court.

1. Wills.—Will devising to testator's wife "her life time, all of my real estate . . . to use in any way for her benefit or dispose of as she sees proper amongst any of the children," conveyed to widow only life estate coupled with power of disposition amongst children.

2. Wills.—Under will devising life estate to widow with power of disposition amongst any of testator's children, on death of widow without exercising right of disposition land would have passed in equal interests to all children.

3. Wills.—Under will devising life estate to widow with power of disposition amongst any of testator's children, widow was not required, in disposing of estate, to grant or devise estate to all children, but was entitled to choose from amongst children those she desired to take remainder.

4. Remainders.—Where widow held life estate and children had title in remainder, children and widow could by deed in which they united convey the fee.

5. Deeds.—In construction of deeds, intention of parties should be ascertained.

6. Deeds.—Deeds will be upheld as other contracts, however informally they may be drawn, when terms are sufficient to express intention of parties.

7. Deeds.—In deed from widow and "her heirs," showing who heirs were, and signed and acknowledged by heirs, word "heirs" should be held to mean children of widow, where parties designated as heirs were not heirs of widow but heirs of widow's husband under whom they held land.

8. Deeds.—Deed by widow holding life estate, and by children entitled to remainder, naming children in body of deed and referring to them as grantors, could not be avoided by children, though they were not named in granting clause of deed.

9. Estoppel.—Grantors in deed are estopped from asserting as against grantee and his vendees any right or title in derogation of deed, and from denying truth of any material fact in deed.

10. Estoppel.—Where deed recited that widow sold her life dowry in land described and that land was transferred to grantee by children of widow, naming them, it was not necessary for children to join with their mother in conveying her life estate, and children could not avoid deed on ground that it was only intended to convey mother's life estate.

11. Deeds.—Where children entitled to remainder joined with mother, holding life estate, in conveying land, children could not avoid deed on ground that their mother was married at time deed was executed and that her second husband did not join in deed, since such defense would be available to mother only in proper case.

12. Powers.—Where widow, entitled to life estate with power to dispose of land to any of testator's children, exercised power by executing deed to children, joined in by other children, it was not necessary to validity of conveyance that her then husband should join in its execution.

BARNES & SMITH for appellants.

E. B. ANDERSON and KIRK & BARTLETT for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

Claiming to be the owners of six-eighths of a certain tract of land in Ohio county, Ky., the appellants, as plaintiffs below, instituted this action in the Ohio circuit court to recover of the appellees, as defendants, the value of six-eighths of the oil produced and marketed therefrom, for an accounting; and for an injunction against further producing and marketing oil without accounting to them therefor.

In the summer of 1884, Hardin Ashley, a resident of Ohio county, Ky., died testate, the owner of the land involved in this litigation, having on March 29, 1884, made and published his last will and testament which was probated in the county court of that county at its August term, 1884. By his will he disposed of the land in this manner: "Item 1. I give and devise and bequeath to my wife, Eliza Ashley, her lifetime, all of my real estate and personal property to use in any way for her benefit or dispose of as she sees proper amongst any of the children."

The testator left surviving him his widow, Eliza Ashley, and nine children. Shortly after the death of Hardin Ashley, the widow and children, by a mutual understanding and agreement, set apart to Annie Ambrose, a daughter, and at that time the wife of J. H. Ambrose, one-ninth, or approximately 14 acres, of the land left by the said Hardin Ashley, as her interest therein, and she went into the actual possession thereof. That 14 acres is not involved in this litigation. On March 27, 1907, the widow and children of Hardin Ashley (except the said Annie Ambrose and J. H. Ambrose) executed a deed reading as follows:

"This deed, between Eliza Ashley and her heirs, of Ohio County, Ky., of the first part, and

Hardin Ashley, of the same County and State, of the second part.

"Witnesseth: That the said party of the first part, in consideration of $375.00, to be paid cash in hand. The said Eliza Ashley, sells her life dowry in said land described below, to the party of the second part, the receipt of which is hereby acknowledged, do hereby sell, grant and convey to the party of the second part, their heirs and assigns, the following described property, viz.:

"A certain tract or parcel of land on the waters of Slover, and bounded as follows, to wit: Beginning at a stone, corner to Patterson in his line; thence W. 11 W. 113 poles to three white oaks, hickory and dogwood in Bunger's corner; thence with his line N. 76 E. 148 poles to a beech and white oak in Rayman's line S. 11 S. 155 poles to two hickories and two small dogwoods near a big rock, and corner to Patterson; thence with his line N. 88 W. 148 poles to the beginning, to contain 124 acres more or less. Two shares, which is about $27^7/_9$ acres, this being land transferred from Jonathan Hoover and his wife, Mahala Ann Hoover, to Hardin Ashley, dec., and Eliza Ashley, his wife, and recorded in Deed Book Y, page 281, and transferred to Hardin Ashley by Eliza Ashley, Elmore Ashley, Bessie Lake, and Billie Lake, her husband, Morgan Ashley, and Annie Ashley, his wife, Oxie Shaver, and Jacob Shaver, her husband, Cordelia Funk, and Jock Funk, her husband, Sapora Bartlett, and Alonzo Bartlett, her husband.

"To have and to hold the same with all the appurtenances thereon, to the second party, their heirs and assigns forever, with covenant of 'General Warranty.'

"In testimony whereof, witness our signatures, this 27th day of March, 1907.

| | |
|---|---|
| "Eliza Ashley | Cordelia Funk |
| "Jock Funk | Morgan Ashley |
| "Ann Ashley | Sapora Bartlett |
| "A. Bartlett | E. L. Ashley |
| "Bessie Lake | William Lake |
| "J. T. Shaver | Oxie Shaver" |

Eliza Ashley and Oxie Shaver, Bessie Lake, Cordelia Funk, Sapora Bartlett, Morgan Ashley, and E. L. Ash-

ley, who signed said deed, are the widow and six of the nine children of the testator, Hardin Ashley; and these persons except Eliza Ashley are the appellants here. The grantee, Hardin Ashley, is one of the children of the testator, Hardin Ashley, and his wife, Eliza Ashley.

Malinda Ashley, a daughter of the testator and Eliza Ashley, married Jesse King and died subsequent to her father, leaving two children, Whalin King and Elder King, who by deeds dated July 2, 1913, and August 16, 1919, conveyed their joint undivided interest in the land to Hardin Ashley, the grantee in the above-mentioned deed.

On September 9, 1920, Hardin Ashley, grantee in the aforesaid deeds, conveyed the land in question to Eugene Oller, who on November 10, 1923, conveyed it to the appellee J. R. Weller, who on June 12, 1926, executed a lease of the land for oil and gas purposes to one J. R. Thomas, and which lease was, by him, on June 14, 1926, assigned to the appellee J. C. Ellis, who entered thereunder and has drilled some 24 oil wells on the land in controversy and has produced and is now producing large quantities of oil therefrom.

The appellees filed separate answers, in which they set up several defenses, among them, title in themselves under the deed of March 27, 1907, aforesaid, executed by the appellants to Hardin Ashley; and an estoppel by said deed as to each of them; and in view of the conclusion we have reached as to this deed, the other defenses need not be considered.

By reply, after traversing the affirmative allegations of each of the answers, appellants admitted the execution of the deed of March 27, 1907, but in avoidance thereof alleged: (a) That it was not intended by, nor was it the purpose of, that deed to convey to Hardin Ashley any interest in or title to said land greater than the life estate of Eliza Ashley; and (b) that while they each signed and acknowledged the deed, since neither of their names appeared in the granting clause thereof, said deed was and is void as to each of them; and (c) that at the time of the execution of said deed, the said Eliza Ashley was a married woman, having subsequent to the death of said Hardin Ashley married one John W. Ashley, and since said John W. Ashley did not join therein, said deed was and is void as to the said Eliza Ashley.

A demurrer was sustained to this reply, and to said reply as amended; and, plaintiffs having declined to plead further, judgment was rendered dismissing their petition, and they appeal.

1.   Under the will of Hardin Ashley, his widow, Eliza Ashley, took a life estate in the lands in controversy, coupled with the power of disposition thereof "amongst any of the children" of testator.  But for the qualifying words "amongst any of the children," under repeated decisions of this court, she would have taken the fee.  These qualifying words are clearly a devise over, and limit her interest to a life estate.  Pedigo v. Botts, 89 S. W. 164, 28 Ky. Law Rep. 196.  This devise over placed no restriction upon Eliza Ashley as to the disposition of the estate, except that "any of the children" are designated as the remaindermen; and upon the death of Eliza Ashley, without exercising the right of disposition granted by the will, the land in controversy would have passed in equal interests to all the children. It is equally apparent that the widow was given the right to dispose of the estate amongst any of the children.  In other words, she was not required, in making disposition in her lifetime, or by last will to give, grant, or devise the estate so that all the children might share in it, but she could "pick and choose" from amongst the children such one or more of them as she desired to take the remainder; and, consequently, she could, by deed, convey the fee to any one or more of the children, or could have by will devised it to any one or more of them.  Dills v. Adams, 43 S. W. 680, 19 Ky. Law Rep. 1169; Constantine v. Moore, 62 S. W. 1016, 23 Ky. Law Rep. 369; Alsip v. Morgan, 109 S. W. 312, 33 Ky. Law Rep. 72.  And she could have conveyed without the children joining with her.

2.   At the time of the execution of the deed March 27, 1907, under which appellees claim, the grantor, Eliza Ashley, held said land for life and appellants had the title in remainder.  Clearly they could, by deed in which they united, convey the fee (Woolford v. Smith, 146 Ky. 341, 142 S. W. 1055); and since appellants in their reply admit the execution, by each of them, of that deed, but seek to avoid its effect as a conveyance, it becomes necessary to consider that instrument.

While appellants are not named in the granting clause of that deed, they are named in the body of it and referred to therein as grantors, immediately following

the description of the land conveyed, thus: "This being land transferred from Jonathan Hoover and his wife, Mahala Ann Hoover, to Hardin Ashley, dec., and Eliza Ashley, his wife, and recorded in Deed Book Y at page 281, and transferred to Hardin Ashley by Eliza Ashley, Elmore Ashley, Bessie Lake and Billie Lake, her husband, Morgan Ashley and Annie Ashley, his wife, Oxie Shaver and Jacob Shaver, her husband, Cordelia Funk and Jock Funk, her husband, Sapora Bartlett and Alonzo Bartlett, her husband." Following that recital, there is the usual habendum et tenendum, signatures of the parties named, and certificates of acknowledgment by each of them.

In the construction of deeds it has long been the rule to endeavor to ascertain the intention of the parties to them; and the trend of modern decisions is to uphold deeds as other contracts, however informally they may be drawn, when the terms are sufficient to express the intention of the parties. In line with this trend, the rule is stated in 18 C. J. 173, thus: "It is essential that the deed sufficiently designate the grantor. If, however, the identity of the grantor is certain from a consideration of the entire instrument, it is sufficient, although he is not named in the premises nor in the granting clause. . . . Further it is not essential that the grantors be described by name where they are otherwise so described as to be identified." In 8 R. C. L. 935, the rule is stated thus: "It is sufficient, in general, that there be parties able to contract and be contracted with, a proper subject matter sufficiently described, a valid consideration, apt words of conveyance, and an instrument of conveyance duly sealed and delivered. Even the omission of all or any of the formal parts of a deed does not destroy its validity, where enough appears on its face to show that those having an interest intend to convey it, and they join in sealing the instrument, it being sufficient if the matter written is legally set forth in an orderly manner by words which clearly specify the agreement and meaning of the parties and bind them."

In Stephens v. Perkins, 209 Ky. 651, 273 S. W. 545, wherein we had for construction a deed, the granting clause of which reads as follows: "Know all men by these presents that we, the heirs of Whitmill Stephens, for and in consideration of" the sum of "$100.00, paid by James Stephens to Whitmill Stephens, we the heirs

of Whitmill Stephens do hereby assign, convey and deliver our right, title and interest to the within described land"—we said: "The words, 'we the heirs of Whitmill Stephens,' show clearly who conveyed the property. The meaning of the deed may be determined from its terms without doubt." The deed was upheld.

The deed under consideration here is from "Eliza Ashley and her heirs"; it shows, but in an inartful manner, just who these "heirs" are; it gives their names and they all sign and acknowledge it. While the parties named and so designated were not the "heirs" of Eliza Ashley, they were her children, and were heirs of Hardin Ashley, under whom they held the land; and the word "heirs" as used in the deed can and should be held to mean children.

In the case of Bain et al. v. Tye et al., 160 Ky. 408, 169 S. W. 843, we said: "It is an elementary rule in the interpretation of deeds that the intention of the parties should be effectuated, and in doing this a liberal construction is given to deeds inartificially and untechnically drawn. The intent must primarily be gathered from a fair consideration of the entire instrument and the language employed therein, and should be consistent with the terms of the deed, including its scope and subject-matter."

3. Appellant cannot be heard to say that the deed of March 27, 1907, was only intended to convey the life estate of Eliza Ashley. They are estopped from asserting as against the grantee therein and his vendees any right or title in derogation of the deed, and from denying the truth of any material fact in it. However, we might observe here that it was not necessary for their joining with their mother in conveying her life estate. While the deed recites that "Eliza Ashley sells her life dowry in the land described below," it also recites that the land described is "transferred to Hardin Ashley, by Eliza Ashley, Elmore Ashley, Bessie Lake and Billie Lake, her husband, Morgan Ashley and Annie Ashley, his wife, Oxie Shaver and Jacob Shaver, her husband, Cordelia Funk and Jock Funk, her husband, Sapora Bartlett and Alonzo Bartlett, her husband."

In Simmons' Adm'r v. Simmons, 150 Ky. 85, 150 S. W. 59, we said: "A person who assumes to convey a title by deed is estopped as against the grantee, to assert any-

thing in derogation of the deed. He will not be heard, for the purpose of defeating the title of the grantee, to say, that at the time of the conveyance he had no title, or that none passed by the deed; nor can he deny to the deed its full operation and effect as a conveyance.''

Appellants are in no position to complain, nor can any advantage accrue to them by reason of the fact, if it be the fact, that their mother was a married woman at the time the deed of March 27, 1907, was executed, and that her then husband, John W. Ashley, did not join therein. That defense would be available to her only in a proper case and asserted in the proper manner and within the proper time. However, it is apparent that in the execution of the deed in question, the mother was exercising a power conferred upon her by the will of Hardin Ashley, and in a manner authorized and directed by said will. In such case it was not necessary to the validity of the conveyance that her then husband join in its execution. 21 R. C. L. 791; Tyree, etc., v. Williams, 3 Bibb, 365, 6 Am. Dec. 663; Meeks v. Robards, 157 Ky. 199, 162 S. W. 818.

Finding no error in the judgment, it is affirmed.