## Goodrum's Guardian et al. v. Kelsey et al.

(Decided May 31, 1932.)

W. D. GILLIAM and NOEL F. HARPER for appellants.

F. R. GOAD and N. G. GOAD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

E. L. Kelsey, a resident of Allen county, died in the year 1915, leaving a will by which he devised his real estate to his wife, Eliza Kelsey, for life with remainder to his sons, Harlan R. Kelsey, Ernest L. Kelsey, Nolen V. Kelsey, Mack Kelsey, and Walter Kelsey. Nolen Kelsey died intestate in the month of May, 1924, while the life tenant, Eliza Kelsey, was alive, survived by an infant son, Carrol Fay Kelsey, and his widow, Allie Kelsey, now Allie Goodrum.

About three years prior to his death, and during his infancy, Nolen Kelsey and his brothers, Harlan and Ernest, became partners in a mercantile business at Halfway, in Allen county, on borrowed capital represented by three notes aggregating $14,000 on which R. E.

Kelsey, their mother, and J. W. Willoughby were sureties. To secure Willoughby, E. L. Kelsey and R. E. Kelsey mortgaged their interest in the land devised by their father. The mortgage was signed and acknowledged by them on January 18, 1921. It was also signed and acknowledged by Nolen Kelsey on May 23, 1924, after he had attained his majority, and shortly before his death. In December, 1922, the firm's store building and stock of goods, with the exception of the cash register and a few goods worth about $180, were destroyed by fire. The firm collected insurance amounting to $10,000 and applied the same on the firm's notes and other outstanding indebtedness. After the fire the three partners continued in the business until the spring of 1923, when Harlan sold his interest to Ernest and Nolen, and also conveyed them a store site for $3,400. On this site Ernest and Nolen built a store costing about $1,000. Shortly thereafter Blonville Cooksey became a partner, and the business was conducted from that time on in the name of Kelsey Brothers & Cooksey. On the death of Nolen Kelsey, in 1924, Ernest Kelsey qualified as his administrator, and settled his estate. No exceptions were filed to the settlement and no steps were ever taken to falsify and surcharge the settlement.

During the month of March, 1929, Allie Goodrum, as guardian for Carrol Fay Kelsey, her son, and the son of Nolen Kelsey, brought suit against Harlan Kelsey and the other joint owners for a sale of the real estate devised by E. L. Kelsey, and a division of the proceeds. J. W. Willoughby intervened in the action, and asserted a lien by virtue of his mortgage on the interest of Nolen Kelsey to secure him in the sum of $950, the balance due by Nolen on the partnership debts on which the intervener was surety. The land was sold by the commissioner and brought $4,250. During the progress of the action Allie Goodrum in her own right set up a claim to dower in that portion of the proceeds which represented her husband's interest in the property.

About the same time Allie Goodrum in her own right, and as guardian for Carrol Fay Kelsey, brought suit against Ernest Kelsey and Harlan Kelsey for a settlement of the partnership theretofore existing between them and her husband, Nolen Kelsey, and claiming that she and her ward were entitled to several hundred dollars from the proceeds of the partnership.

After consolidating the two causes, and hearing the evidence, the court denied the relief sought in the petitions, and directed that that part of the proceeds of the sale claimed by Carrol Fay Kelsey should be paid to C. M. Smith as credit upon the note he held, and that the same should be held to protect Willoughby as surety for the Kelseys if Smith should not file his claim.

1. The partnership affairs were fully developed on the hearing, and the evidence fails to show that at the time of Nolen Kelsey's death, or at any time, the partnership assets exceeded its liabilities. On the contrary, the evidence shows that from the beginning the partnership was never a success, and that it was never able to discharge the obligations originally incurred to enable it to engage in business. That being true, we see no reason to disturb the chancellor's finding that Mrs. Goodrum was not entitled to recover either in her own right, or as guardian for Carrol Fay Kelsey, anything from her husband's former partners.

2. Mrs. Goodrum's claim to dower in the proceeds of that portion of the real estate representing the interest of her deceased husband was properly rejected. Under our law the wife is not entitled to dower in the real estate of her husband unless at the time of his death he had either the possession, or the right of possession. Carter v. McDaniel, 94 Ky. 564, 23 S. W. 507, 15 Ky. Law Rep. 349; Butler v. Cheatham, 8 Bush 594; Rice v. Rice, 133 Ky. 406, 118 S. W. 270. Here the husband, Nolen Kelsey, though having an undivided interest in remainder in the land, died during the lifetime of the life tenant, who had possession, and the exclusive right of possession, thus presenting a case where neither essential to the right of dower was present.

3. The last question for decision is whether the mortgage to J. W. Willoughby was valid as to Nolen Kelsey. We attach no importance to the fact that the mortgage recites that it was given to secure the indebtedness of Nolen as well as his brothers or that it was to become void in the event that any one of them or their personal representatives paid the indebtedness when due. Of controlling importance is the question: Who were the grantors or mortgagors? The only persons named in the mortgage as grantors or mortgagors at the time of its execution and acknowledgment on January 18, 1921, were E. L. Kelsey and R. E. Kelsey, and the mort-

gage was neither signed nor acknowledged at that time by Nolen Kelsey. Shortly before his death in the year 1924, and after he had attained his majority, Nolen signed and acknowledged the mortgage. It is the law of this state that a deed, and for the same reason a mortgage, is not valid as to one who is not named or identified in some way as grantor or mortgagor, although he may sign and acknowledge the instrument. Hatcher v. Andrews, 5 Bush 561; Parsons v. Justice, 163 Ky. 737, 174 S. W. 725; Stephens v. Perkins, 209 Ky. 651, 273 S. W. 545; Shaver v. Ellis, 226 Ky. 806, 11 S. W. (2d) 949. Not only so, but we held in Hall v. Ditto, 12 S. W. 941, 11 Ky. Law Rep. 667, that a deed did not bind one who, without being named as grantor, signed and acknowledged it while a minor, and reacknowledged it after attaining her majority, and did not estop her from claiming the land. There is no reason why the same rule does not apply to Nolen Kelsey, who did not sign and acknowledge the mortgage during his minority, but did sign it after he became of age. Even if the mortgage had just been prepared at the time it was signed and acknowledged by him after he attained his majority, it would not have been valid as to him as he was not named or identified in some way as grantor or mortgagor, and it is not perceived how his act in signing and acknowledging a mortgage which, during his infancy, had been signed and acknowledged by the only persons named or identified therein as the grantors or mortgagors, operated as an estoppel or ratification of the mortgage. It follows that the mortgage created no lien on Nolen's interest in the land.

4. As to whether, at the instance of Willoughby, the surety, or of Smith, the creditor, that portion of the proceeds of the sale representing Nolen's interest in the land may be applied to a payment of the indebtedness, we express no opinion, as the determination of that question involves the validity of the original contract made by Nolen, while an infant, and the further question of ratification, which phases of the case have not been fully developed.

Wherefore, that portion of the judgment dismissing the claim against the partnership and denying dower is affirmed; but that portion of the judgment awarding a lien on Carrol Fay Kelsey's interest in the proceeds of the sale is reversed, and cause remanded for proceedings not inconsistent with this opinion.