Hollowell et al. v. Caldwell County et al.

Same v. Hughett et ux.

Hughett et ux. v. Caldwell County et al.

May 2, 1941.

90

George O. Eldred, Marshall P. Eldred and Earle Nichols for Caldwell County.

S. D. Hodge, R. W. Lisanby and Alvin Lisanby for Mary F. Hollowell and others.

C. A. Pepper for John Hughett and others.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part.

This litigation involves the title to the minerals in a small tract of land of 1 acre and 14 square yards,

which is located in Caldwell County about 3 miles north of Princeton. The land in dispute lies between the old and the new Wilson Warehouse Roads and includes the new road, a portion of which the county ceased using as a road in 1937. The record shows that a rich deposit of fluorspar underlays land abutting the new road on the west, and it is thought the minerals under the land in controversy are of great value.

Caldwell County (hereinafter referred to as the County) is asserting title to the minerals in a strip 50 feet wide extending along the entire western boundary of this small tract, which strip has been used by the County as a road since 1918. The widow and heirs of John W. Hollowell, and L. J. Hobby are claiming the minerals under this entire tract; also, John Hughett and wife are claiming the minerals under all the land in dispute.

The Hughetts instituted this action to quiet their title against the County and H. W. Morse, to whom it had leased the minerals under the roadway, and against the Hollowell heirs and Hobby. By appropriate pleadings the County denied the title of the other claimants to the minerals in the 50-foot roadway and asserted title thereto. The Hollowell heirs and Hobby denied the title of the Hughetts and of the County and pleaded they had been in adverse possession of these minerals for more than 15 years under a lease R. R. Morgan executed to John W. Hollowell in 1917. After much proof was taken, the chancellor adjudged the County had a fee-simple title by adverse possession to the 50-foot strip used as a roadway, and that all the remainder of the acre and 14 square yards was owned in fee by Hughett. The Hollowell heirs and Hobby prosecute an appeal against the County and the Hughetts; while the Hughetts prosecute an appeal against the County.

C. C. Williamson in 1910 conveyed to R. R. Morgan a tract of 125 acres (referred to throughout the record as the Williamson tract), the eastern boundary of which was on the Old Wilson Warehouse Road. We gather from the record that Morgan contracted to sell this tract to W. W. Smith, who moved on the land without title papers and remained thereon about two years; that not being able to pay for the land, Smith moved off and surrendered it back to Morgan. The Wilson Warehouse Road went over quite a hill near the home of Rufe

Tyrie, and to divert the road to the west in order to avoid this hill, the County in 1918 bought 1 acre and 14 square yards from Smith, who was then occupying the 125-acre tract. This small parcel is in the shape of a diamond and is described by metes and bounds. The price was $16 per acre and the County paid Smith $17.40 therefor. On May 4, 1918, a deed was executed by Smith and wife to the County and Rufe Tyrie, which recites Tyrie was to have all the land conveyed therein except 50 feet extending the full length of the tract on its western side "which 50 feet is to be used for public road and is hereby conveyed to the County for road purposes." The habendum clause in this deed recites the land is conveyed with covenant of general warranty of title "unto it the said second party and its heirs and assigns, etc., forever." The instrument separately names the County as the party of the second part and also separately names Rufe Tyrie as such.

Soon after obtaining this deed the County constructed a road on the 50-foot strip conveyed it (which is referred to in the record as the New Wilson Warehouse Road), and maintained it as such from 1918 to 1937. By reason of mining operations of the Hollowells and Hobby on the land adjoining this new road on the west, the roadway caved in to such an extent in the spring of 1937 that the County ceased using the road at this point and a detour was constructed. The County executed a mineral lease to H. W. Morse, but we are unable to find it in the record and cannot ascertain whether part or all of its 50-foot roadway was thus leased. However, it is not necessary in deciding this case for us to know just what part of the roadway the County leased to Morse for mineral development.

Smith had no title to the land conveyed the County and Tyrie but same was in R. R. Morgan. Although not parties to the deed, and with their names nowhere appearing in the body thereof, R. R. Morgan and wife signed and acknowledged the deed with Smith and wife, evidently thinking this would pass title to the County and Tyrie. Of course it did not. Parsons v. Justice, 163 Ky. 737, 174 S. W. 725; Goodrum's Guardian v. Kelsey, 244 Ky. 349, 50 S. W. (2d) 932. The County admits it obtained no title to the roadway by virtue of this deed, but argues that it occupied and held same from 1918 to 1937 under color of title by reason of the

deed, therefore its adverse possession for more than 15 years has ripened into a fee-simple title in the roadway. It further contends that the deed which lends color of title to its adverse possession delineates the extent of the title it holds adversely, and that the words appearing in the deed "which 50 feet is to be used for public road and is hereby conveyed to the County for road purposes" is a covenant and not a condition subsequent. Much reliance is placed by the County in Williams v. Johnson, 284 Ky. 23, 143 S. W. (2d) 738.

The Williams case calls attention to the fact that the intention of the parties is controlling in determining whether the controversial language in the deed shall be construed to be a covenant or a condition subsequent. In the instant case the County only paid $17.40 for the entire acre and 14 square yards. After obtaining the 50-foot strip on the western edge thereof for its road, the County let the remainder of the land be conveyed to Tyrie by the same deed in which the 50-foot strip was conveyed it. This was evidently done so that Tyrie, whose land abutted the old road, would likewise have land abutting the new road and have the same access thereto as he had to the old road. All the land it did not use for road purposes the county caused to be conveyed to Tyrie, which convinces us that the parties to the deed intended that the County would only acquire an easement for road purposes in the 50-foot strip. If the County had intended to acquire the fee in the 50-foot strip, why permit to be conveyed to Tyrie by far the greater part of the land for which it had paid? What use could the County make of this 50-foot strip after same was no longer used for road purposes? It is well known in this state that 20 years ago, and indeed up until very recent years, that a County in acquiring land for road purposes ordinarily had only an easement conveyed it rather than the title in fee.

The County cites many cases wherein the clause "for school purposes" appearing in deeds has been construed by us not to be a condition subsequent, but a covenant to show that the Board of Education was acting within its authority in acquiring real estate. But we have long since made a distinction between land acquired for a right of way and that acquired for the purposes of education. Where it was the intention of the parties, as in the case at hand, that the grantee would only ac-

quire an easement of right of way, the fact that the deed contained a covenant of warranty, or that the right acquired was designated as the fee, was not necessarily controlling, and that the grantee took the strip for the purpose of a right of way and could hold same only as long as it was so used. Laurel County v. Howard, 189 Ky. 221, 224 S. W. 762; Mammoth Cave Nat'l Park Ass'n v. State Highway Commission, 261 Ky. 769, 88 S. W. (2d) 931; Sherman v. Petroleum Exploration, 280 Ky. 105, 132 S. W. (2d) 768, 132 A. L. R. 137. We are convinced that the County only acquired an easement to use the 50-foot strip as a roadway, therefore, the part of the road it abandoned in 1937 by reason of the cave-in reverted to the present owner of the 1 acre and 14 square yards, which we will later show is Hughett.

We now take up the claim of the Hollowell heirs and Hobby. On April 2, 1917, R. R. Morgan executed to John W. Hollowell a mineral lease for a period of 25 years on three tracts containing 325 acres, one of which was this Williamson tract which extended to the then Wilson Warehouse Road and included the small parcel of land in controversy. This lease provided for a rental of $150 per year for the years of 1918 and 1919, which was paid and extended the lease to Jan. 15, 1920. It further provided that beginning Jan. 15, 1920, a royalty of 50 cents per ton should be paid lessor on all fluorspar removed; that if the lessee failed to prospect on the lease within nine and a half months from its date, it became void. Soon after acquiring the lease in 1917, Hollowell sunk a shaft thereon but no mineral was produced.

Morgan conveyed the Williamson tract to Lucian Leech on May 26, 1919, but the description in this deed did not include the acre and 14 square yards in controversy. On Sept. 18, 1922, Lucian conveyed this land to R. D. Leech, using the same description which was embraced in the deed from Morgan to him; therefore, R. D. Leech never obtained title to this small tract. R. D. Leech refused to recognize the mineral lease John W. Hollowell had obtained from Morgan in 1917, contending that it had long since expired for nondevelopment, and he forbade Hollowell to prospect on his land. On Dec. 19, 1923, R. D. Leech and wife executed an instrument to John W. Hollowell wherein they leased to him the minerals in the Williamson tract for 25 years with a royalty

of 75 cents per ton for fluorspar, and a rental of $20 per year for each year lessee failed to work the lease. The leased premises are described by abutting property on the four points of the compass and the boundary given on the east is the "Old Wilson Warehouse Road." Although R. D. Leech informed Hollowell upon the execution of this instrument that his land did not extend to this road, Hollowell insisted on the lease giving the road as its eastern boundary.

John W. Hollowell employed Hobby to prospect on the Leech lease and the latter in 1929 found valuable fluorspar thereon, and Hollowell assigned Hobby an undivided one-half interest in this Leech lease on July 12, 1930. On June 22, 1936, Earl Hollowell in conveying his interest in the minerals in the Williamson tract to the other Hollowell heirs described the same as being leased to John W. Hollowell by R. D. Leech in 1923. The Hollowell heirs and Hobby contend that the instrument executed by Morgan to Hollowell in 1917 was more than a lease and was a conveyance of the minerals for a period of 25 years. The claim their pleading sets up to the minerals in this small tract is by adverse possession.

But the terms of the 1917 instrument show it is a lease and not a conveyance of the minerals and there is no evidence that the Hollowells were ever in possession of the minerals under this acre and 14 square yards. One claiming adverse possession to minerals has no potential possession of same so as to extend his adverse possession to the unmined minerals. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S. W. (2d) 394. Since the Hollowells never mined the minerals in the land in controversy, they cannot hold same under the theory of adverse possession. It is evident that John W. Hollowell recognized the 1917 Morgan lease had expired by its terms by reason of his nondevelopment of the lease when he took the lease from R. D. Leech in 1923; also his heirs recognized that fact as did Hobby, who owned an undivided one-half interest in the minerals. In the circumstances shown by this record Hollowell in accepting the Leech lease surrendered all claims he had to the minerals under the Morgan lease. The acceptance of a new and valid lease by the lessee where it was the intention of the parties that the new lease takes effect at once operates in law as a surrender of the first lease. Hughes v. Farmers' Nat. Bank, 83 Vt. 386, 76 A. 33;

Reid v. Reid, 230 Ky. 835, 20 S. W. (2d) 1015; Garrett v. South Penn Oil Co., 62 W. Va. 587, 66 S. E. 741.

It is our conclusion that John W. Hollowell has no claim under the Morgan lease or by adverse possession to the minerals in this small tract; and that the lease executed to him by Leech transferred no title to the minerals therein because Leech did not own this acre and 14 square yards. Therefore, Hollowell's heirs and Hobby have no title in the minerals under this small tract.

We come now to the claim of Hughett. With the exception of the 50-foot roadway, Rufe Tyrie has been in the adverse possession of this acre and 14 square yards since Smith conveyed it to him in 1918. Tyrie and wife first conveyed the minerals therein to Hughett in 1933, followed by a conveyance of the fee to him in 1934. In 1935 Hughett obtained a quitclaim deed from the heirs of R. R. Morgan. These three deeds vested in Hughett fee-simple title to all this tract, except the 50-foot roadway easement, and he has absolute title to so much of the easement as the County has abandoned as a road. In the future should the County abandon more of this road, it will revert to Hughett or the then owner of this small tract of land.

As Hughett has been operating the Leech lease since 1932 under contracts with the Hollowell heirs and Hobby whereby he pays them a royalty on the spar mined, they contend he is their tenant and cannot assert a claim adverse to them, citing United Hebrew Congregation v. Bolser, 244 Ky. 102, 50 S. W. (2d) 45; Cherry Bros. v. Tennessee C. Ry. Co., 222 Ky. 79, 299 S. W. 1099 and Cummings v. Watson, 182 Ky. 56, 206 S. W. 21. These cases state the rule that one being in possession as the agent or tenant of another cannot assert an adverse claim to the other's property in the absence of a clear and unequivocal disclaimer of the tenancy or agency by which he acquired possession. In the case before us the descriptions contained in Hughett's contracts with the Hollowells and Hobby under which he operates these mines plainly show the small parcel of land in controversy was never included in any of Hughett's contracts. As Hughett was not a tenant of the Hollowells and Hobby in so far as this small parcel of land was concerned, there is no principle of law that we know of

which prevented him from acquiring title thereto adverse to persons from whom he was leasing other property.

Several motions were made before this court concerning the supersedeas bond and a rule for contempt, which motions were passed to merits. We do not deem it necessary to consider such motions on this appeal.

So much of the judgment as the Hollowells and Hobby appeal from is affirmed. That part of the judgment from which Hughett prosecutes an appeal against the County is reversed with directions for the chancellor to enter a judgment in conformity with this opinion. Whole Court sitting.