Myrtle E. ROWE et al., Appellants,

v.

John W. BIRD et al., Appellees.

Court of Appeals of Kentucky.
June 7, 1957.

Rehearing Denied Sept. 20, 1957.

Sandidge & Sandidge, Owensboro, for appellants.

Woodward, Bartlett & McCarroll, Wilson & Wilson, Owensboro, for appellees.

MOREMEN, Judge.

This appeal arose from a judgment entered under Chapter 418 of Kentucky Revised Statutes, which declared the rights of the parties in and arising out of various deeds, leases, assignments, overriding royalty reservations, and working interests in oil and gas being produced from a 53 acre tract of land in Muhlenberg County.

Several persons, who trade under the firm name of Hanley & Bird, are appellees herein, and this suit began when they filed complaint and requested that they be adjudged entitled to receive 1/16 of the oil and gas produced by a 53 acre tract.

The decision on appeal will turn on the rights gained by the various parties under instruments executed by the owner of a life estate and the owner of the remainder under a deed to the 53 acres. The following chart may be a good starting point for recitation of facts:

James T. & Mary Powell

Deed

53 Acres

1943

Life Estate | Remainder

Maude Wice (W. H. Wice) | James D. (Delma) & Joseph Wice (Jean)

⅛ royalty lease (20 years) | ⅛ royalty lease (Maude Wice (life tenant) (later signed (lease but her

June 7, 1952 | Sept. 4, 1954 (name not in (caption of lease)

Hanley & Bird (Appellees) | Myrtle E. Rowe (Appellant

Assignment reserving overriding royalty of ½₆ of ⅝ production | Assigned ⅞ working interest subject to overriding royalty of ½₆ of ⅝ production

July 23, 1954 | October 2, 1954

George C. Sakellaris | Eight Persons

Assignment subject to royalties

August 6, 1954 | Nov. 20, 1954 Myrtle E. Rowe assigned to husband, Fred W. Rowe, remaining ⅛ of working interest, subject to overriding royalty reservation of ½₆ of ⅝ production

Fred W. Rowe (Appellant

Other assignments of fractional interests subject to Hanley & Bird reservation

More fully, these are the facts:

On February 8; 1943, James T. and Mary Powell conveyed a life estate in the 53 acre tract to Maude Wice. By the same deed they conveyed the remainder to James D. and Joseph Wice.

On June 7, 1952, Maude Wice, life tenant, and her husband executed an oil and

gas lease to appellees, Hanley and Bird, for a period of twenty years and so long as the premises were productive. It contained this provision: "Lessor hereby warrants, and further covenants and agrees to defend, the title to said premises * * *." It purported to grant a working interest, as if the lessor were owner in fee simple, and provided for the payment of ⅛ of production as royalty to lessor.

On July 23, 1954, Hanley and Bird agreed to assign, and on July 27, 1954, did assign the lease which they had obtained from Maude Wice to George C. Sakellaris. The agreement was made subject to: "A free overriding royalty reservation unto the assignor, its heirs, successors and assigns, of one-sixteenth (1/16) of all oil, gas & minerals * * *." The warranty was special.

On August 6, 1954, George Sakellaris and his wife assigned the lease to Fred W. Rowe, subject "to an overriding royalty interest of one sixteenth (1/16) of all oil, gas and minerals in, under or that may be produced from the said fifty-three acres (said overriding royalty having been reserved by Hanley and Bird.)" There was no express warranty. The granting clause undertook to transfer "all of their right, title and interest in" the lease.

Before we relate the title descent of the remainder estate, we must observe that the principal question on this appeal concerns the validity of the 1/16 overriding royalty interest of Hanley and Bird. This question was the basis of the original complaint. The judgment entered was this:

"It is ordered and adjudged by the court that the oil and gas lease executed by Maude Wice and her husband, W. N. Wice, to Hanley and Bird, a partnership composed of the plaintiffs, and the leases executed by Joseph P. Wice and wife, and James D. Wice and wife to Myrtle E. Rowe and which leases were subsequently assigned by various instruments of assignment to

defendants, Fred W. Rowe, James J. Thompson, Edmund M. Long, George Thompson, Charles Bloom, Thomas J. Higgins, and George Hulett, vested in said defendants a valid oil and gas lease on the land described in the complaint subject to a free overriding royalty interest of 1/16 of all the oil, gas and minerals. * * *"

It may be seen that the trial court was of opinion that the title to the leases had merged and vested in a group of defendants and because of this fact a valid oil and gas lease was created; in other words, the two invalid leases, when joined, created a good lease. There is some authority for this view because in Union Gas and Oil Company v. Wiedemann Oil Company, 211 Ky. 361, 277 S.W. 323, 324, the court, with sufficient precedent, said:

"As to the other half interest, while neither the life tenant nor the remainderman could singly make a valid lease, they could jointly make such a lease."

We will discuss later problems presented when the parties signed individual instruments. With this in mind, we turn to a description of the title on the remainder side in order to determine whether the entire remainder title ever vested in Fred W. Rowe who claimed the life estate under conveyances described above.

In 1943, as stated before, James T. and Mary Powell deeded a life estate in 53 acres to Maude Wice and the remainder to James D. and Joseph Wice.

On September 4, 1954, James D. and Joseph Wice, and their wives, executed an oil and gas lease on this same 53 acres to appellant, Myrtle E. Rowe. This lease retained a ⅛ royalty for the grantors, and Maude Wice (who, two years before, had leased the property to Hanley and Bird) signed her name to this lease, but her name did not appear in the caption or body of the instrument and was ineffectual as the trial court held. A conveyance signed and acknowledged by a per-

son, not named in the body of the instrument as grantor, is ineffectual and passes no title as to that person. Parsons v. Justice, 163 Ky. 737, 174 S.W. 725; Huntsman v. Bryant, 196 Ky. 312, 244 S.W. 701; Stephens v. Perkins, 209 Ky. 651, 273 S.W. 545; Goodrum's Guardian v. Kelsey, 244 Ky. 349, 50 S.W.2d 932; Hollowell v. Caldwell County, 288 Ky. 89, 155 S.W.2d 481; Flynn v. Fike, 291 Ky. 316, 164 S.W.2d 470; Whitaker v. Langdon, 302 Ky. 666, 195 S.W.2d 285.

On October 2, 1954, Myrtle E. Rowe and her husband, Fred W. Rowe, assigned to James J. Thompson, Edmund N. Long, Paul J. Boggess, William L. Wilson, George S. Wilson, Jr., Charles Bloom, Thomas J. Higgins, and George Thompson "an undivided ⅞ of the entire working interest 'subject to a reservation of ½₆ of ⅝ O.R.R.'" A copy of this instrument was not filed in the record and we wish we had it. From the allegations concerning it in the pleadings, we assume that this was a conveyance by Myrtle E. Rowe in which her husband joined as a nominal party.

On November 20, 1954, Myrtle E. Rowe assigned and set over unto her husband "an undivided ⅛ of the entire working agreement, subject to his proportionate part of ½₆ of ⅝ O.R.R. reserved unto the party of the first part."

A life tenant is not privileged to take oil and gas, nor does he have power to create such privileges in others by the means of lease, Gerkins v. Kentucky Salt Company, 100 Ky. 734, 39 S.W. 444, although the remainderman may bind himself not to question the validity of lease by acceptance of rents, royalties or other means. Neither does the remainderman have the power to lease lands for oil and gas development. Russell v. Tipton, 193 Ky. 305, 235 S.W. 763. Though neither may separately execute a valid lease—jointly, they may. Meredith v. Meredith, 193 Ky. 192, 235 S.W. 757.

The trial court recognized that neither the life tenant nor the remaindermen had power to execute valid leases when they acted individually, but he concluded that since subsequent assignments had vested the ownership of the leases in a group of people who (we presume, but do not know from the record) were working the property, a valid lease existed because of title merger, and, in effect, this group held title because of the joint action of the life tenant and remaindermen.

The word, *joint*, in itself, carries a recognition of time. It usually designates a united or combined existence of, or that which pertains to, two or more objects or persons at the same time. As Webster illustrates it may connote, "of the lives of two or more persons, united in time; concurrent in time till one lapses."

When we look back to the Meredith case (235 S.W. 757, 758) which is authority for the statement that the life tenant and the remainderman jointly may execute a valid lease, we find that two sons owned the remainder estate and the mother owned a life estate. The suit was to recover "royalties due under an oil and gas lease which J. E. Meredith, W. R. Meredith, and their mother, Angeline Meredith, in December, 1917 jointly executed." It is reasonable to infer that the owners signed one instrument at the same time. That presentment of fact is quite different from the one here, where there was no concerted action by the parties that resulted in accomplishment. In the Meredith case, the owners acted at the same time and the lease was to an entity. Here, the remaindermen executed their lease two years after the life tenant did. The lessees were different. The terms of leases, at many points, were dissimilar. Hence, the Meredith case offers only a suggestion of precedent.

The idea that defective individual leases executed at different times may merge and form an effective one is not repulsive. In fact, it appears to fit well into the symmetrical pattern of real estate title law. Its

acceptance, however, should be cautious and the vesting of title which results in the merger should be definite and certain. One should be able to point to a particular person or entity and say with confidence—there the parts joined to create the whole.

We cannot do that in this case. The parties did not act jointly. The terms of the leases differ. But, most important, the entire title has never vested in a single person or entity. A reference to the chart will disclose that the title to this lease has never come to rest in a single person or corporation. On October 2, 1954, Myrtle E. Rowe assigned ⅞ of the working interest to a number of people; and on November 20, following, she assigned her remaining interest to her husband, Fred W. Rowe, subject to the overriding royalty reservation which we have mentioned so often in this opinion. If Myrtle Rowe had assigned her whole interest to her husband, who was also the assignee of the life interest, perhaps the title would be good. But we will not say that because each of about eight people—who were joined as defendants in this action—owned a small portion of the entire estate, that this is sufficient. No close connection has been shown to exist between these parties such as would make them a separate entity recognized by law, such as a corporation or perhaps a partnership of some kind. It is not necessary for us to decide, therefore, whether or not there may be an ultimate merger of the title such as will cure pre-existing defects if one person obtained ownership of all parts of that title. The facts do not present that question to us because Fred Rowe, who owns a life estate, has never obtained over ⅛ of the working interest in the remainder estate.

Since a life tenant does not have the right or power to lease land for the purpose of production of oil or gas or other minerals and any attempt to do so is invalid, Union Gas and Oil Company v. Wiedemann Oil Company, 211 Ky. 361, 277 S.W. 323, we have concluded that the lease executed by Maude Wice to Hanley and Bird, appellees, was invalid at the time it was executed and has not been validated by subsequent events.

We have found this to be a strange case because it is difficult for us to understand why appellant, Fred Rowe, is insisting upon the invalidity of the title through which he claims. It is equally difficult to understand why appellants have tried for a result which might render all the leases void. However, as we have stated, our decision in this case is only to the extent that the lease which created the Hanley and Bird overriding royalty is invalid under the facts of the record and no other matters are decided.

The case is therefore remanded for proceedings not inconsistent with this opinion.

Judgment reversed.