**WARD et al. v. FLEX–O–TUBE CO.**

No. 6401.

United States District Court
E. D. Michigan, S. D.

Jan. 23, 1951.

Smith & Huffaker, Pell Hollingshead and Carroll C. Grigsby, all of Detroit, Mich., for plaintiff.

Beaumont, Smith & Harris and Alfred E. Lindbloom, all of Detroit, Mich.. Pam, Hurd & Reichmann and Fredric H. Stafford, all of Chicago, Ill., Guy G. Bratton, Detroit, Mich., defendant to the counterclaim in pro. per.

LEDERLE, Chief Judge.

### Findings of Fact

1. This action was instituted on February 6, 1947, seeking a declaration that three preliminary reports of examination on and prior to October 21, 1946 constituted final audits determining net worth of a manufacturing business sold by plaintiffs to defendant, at a price subject to adjustment upon ascertainment, by audit, of the true net worth of the business. Based upon these preliminary reports, plaintiffs claimed the true net worth was as they had guaranteed and that they were therefore entitled to return of some $80,000.00 in securities deposited with an escrow agent to secure their guarantee of net worth.

John L. Ward and Richard De Tamble, plaintiffs, and Guy G. Bratton, escrowee and defendant to the counterclaim, are citizens of Michigan. The defendant and counterclaimant, Flex-O-Tube Company, formerly named The Tetrarch Corporation,

is an Illinois corporation. The amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

2. Prior to September 15, 1945, each plaintiff owned five shares of the common stock of The Flex-O-Tube Company, a Delaware corporation, hereinafter called "the old company," being all of its authorized and outstanding stock.

3. On July 2, 1945, plaintiffs entered into an agreement with Irving Rossi, Exhibit A to the Complaint, giving him the option to purchase said stock for $775,000.-00, which option was amended in some particulars by Exhibit B to the Complaint and was further amended and exercised by Exhibit C to the Complaint.

4. About September 14, 1945, said Rossi assigned to defendant all of his rights in the option agreement, the two amendments thereto, and the exercise thereof, including all the rights and privileges incident thereto, and the exercise thereof, to which plaintiffs consented on September 15, 1945.

5. On September 15, 1945, at Chicago, Illinois, in connection with the sale of all stock in the old company to defendant pursuant to the option, amendments thereto, and the exercise thereof, and as additional consideration and inducement for the purchase of such stock by defendant, plaintiffs entered into a written contract of guarantee with defendant, which is Exhibit D attached to the Complaint.

6. Exhibit D, among other things, provided in paragraphs 1, 2, 3 and 4 thereof as follows:

"1. The purchase of the 10 shares of stock of The Flex-O-Tube Company by Tetrarch is predicated and conditioned upon the guarantee that the 'guaranteed net worth' of the assets of Flex-O-Tube on September 15, 1945, shall be not less than $865,762.56, and this agreement and the undertakings hereof by the Guarantors are expressly made and entered into for the purpose of guaranteeing said Tetrarch in connection with this purchase.

"2. The Guarantors expressly agree that the 'net worth' of Flex-O-Tube as disclosed by the balance sheet on September 15, 1945, is not less than the net sum of $865,762.56,

the 'guaranteed net worth' herein referred to. To establish the verity and accuracy of the said 'net worth' Tetrarch is arranging to have an audit of the books of account and records of Flex-O-Tube made as of the close of business on September 15, 1945, by Baumann-Finney & Company, independent Certified Public Accountants of Chicago, Illinois. An inventory will be taken of the raw materials, work in process and finished products owned by Flex-O-Tube as of the close of business on September 15, 1945, which will be subject to the review of and approval by Baumann-Finney & Company at the time of taking and valuing the inventory. The said audit and inventory shall be considered and treated as the basis for verifying the accuracy of the 'guaranteed net worth' and the sum of $865,762.56. The audit to be prepared by Baumann-Finney & Company as in this paragraph provided shall be taken and made on the same basis as the audit of February 28, 1945, made by H. G. Mounteer & Company, of Detroit, Michigan. The inventory to be taken shall be on the basis of cost or market value, whichever is the lower.

"3. If the figures established by the audit of Baumann-Finney & Company as of the close of business on September 15, 1945, shall disclose a 'net worth' less than the 'guaranteed net worth' of $865,762.56, the Guarantors, jointly and severally, agree forthwith to pay to Tetrarch, or its assignees, the difference between the 'guaranteed net worth' and the amount of 'net worth' disclosed by the audit.

"4. The Guarantors jointly and severally guarantee that the 'guaranteed net worth' of Flex-O-Tube as of September 15, 1945, will be $865,762.56. The balance sheet as of September 15, 1945, prepared in accordance with Paragraph 2 hereof will show the net worth which is subject to possible impairment in the values, as stated therein, of accounts receivable, sundry receivables, inventory, investments and claims in favor of the company. If the Guarantors within 90 days from September 15, 1945, satisfy Tetrarch that the values of such items are sufficient when taken with the remaining items on the balance sheet to establish the 'guaranteed net worth' of $865,762.56, the Es-

crowee hereinafter named shall thereupon deliver to the Guarantors funds and securities in his possession to be deposited by the Guarantors as hereinafter provided. If the Guarantors do not satisfy Tetrarch as to the value of these specific items hereinabove set forth within the said 90-day period, then the period for the final determination shall be extended, but in no event later than October 15, 1947. This period should be sufficient to permit the determination of all credits, and particularly those arising from the final assessments on renegotiation.

"In the event the 'guaranteed net worth' shall be impaired, the Guarantors will make good such impairment by the payment of the amount thereof to Tetrarch, or its assignees. Upon presentation of each claim by Tetrarch, or its assignees, under the provisions of this paragraph numbered 4, the Guarantors, jointly and severally, agree that they, or one of them, will within 30 days of the presentation of such claim pay the amount thereof to the claimant named therein.

"Any increases in the amount incident to renegotiations for the fiscal years and periods stated above shall not be treated as a reduction or diminution of the 'guaranteed net worth' for the purposes of this paragraph."

7. No audit of the old company or its books and records was made on or as of February 28, 1945, by H. G. Mounteer & Company.

8. Exhibit D further provided that the plaintiffs deposit with Guy G. Bratton, escrowee, as security for the undertakings and guarantees assumed by plaintiffs, $80,000.00 par-value first-mortgage notes of the old company and certain other funds, and plaintiffs did make such deposit. Exhibit D further provided in paragraph 5 thereof as follows:

"The Escrowee is expressly authorized and directed to deliver to Tetrarch, or its successors and assigns, so much or all of the said securities as may be necessary to satisfy any claim for the impairment of the 'guaranteed net worth' as hereinabove provided that may be presented to the Escrowee in writing at any time on or prior to October 15, 1947. The Escrowee shall have the right to have an audit made to verify the claim for such impairment of the 'guaranteed net worth' as presented to him. If no claim is presented or made by Tetrarch, or its successors, prior to October 15, 1947, then the securities shall be returned by the Escrowee to the Guarantors.

"If the amount held by the Escrowee is not sufficient to compensate in full any claim or claims presented to or asserted by Tetrarch, or its successors or assigns, then and in that event the Guarantors, jointly and severally, agree personally to make good any deficiency so as to satisfy the claim in full.

"Any claim for impairment may be asserted by Tetrarch, or its successors, under the provisions of either paragraph 4 or paragraph 5, or both, and all such claims so asserted may be separately enforced, provided that there shall be only one recovery of each claim filed under either of said paragraphs."

9. By mutual agreement between the parties, the date of September 15, 1945, referred to in Exhibit D, was changed to September 21, 1945, and, accordingly, this latter date was used by the parties in lieu of September 15, 1945, with respect to all of the provisions in the guarantee agreement.

10. Plaintiffs failed within said 90-day period after September 15, 1945, or at any other time, to satisfy defendant that the values of the five items referred to in paragraph 4 of Exhibit D, taken with the remaining balance sheet items, showed a net worth at least equal to the guaranteed amount.

11. Baumann, Finney & Company issued a preliminary report of examination of the old company dated January 22, 1946, a second preliminary report dated February 15, 1946, and a tentative letter modification thereof dated October 21, 1946.

12. On August 7, 1947, six months after this action was instituted, Baumann, Finney & Company issued its report of audit of the books of account and records of the old company as of the close of business on September 21, 1945. This re-

port established that the net worth of the old company as of the close of business on September 21, 1945, was $659,508.60. This report was final except for the ultimate determination of tax deficiencies and renegotiation refunds.

13. On October 10, 1947, defendant made written demands upon plaintiffs and also upon escrowee Guy G. Bratton for impairment of net worth in the sum of $206,253.96.

14. About February 3, 1948, Baumann, Finney & Company issued a statement of net worth of the old company as of the close of business on September 21, 1945. This statement gave effect to certain developments subsequent to its report dated August 7, 1947, including the field determination of federal income tax and excess profits tax deficiencies and the amount of the renegotiation refunds. This statement fixed the net worth at $747,652.09.

15. On February 21, 1948, defendant made written demands upon plaintiffs and also upon escrowee Guy G. Bratton for impairment of net worth in the sum of $118,110.47.

16. The Baumann, Finney & Company audit report of August 7, 1947, as modified by the statement of net worth dated February 3, 1948, correctly determined the net worth of the old company as of September 21, 1945 according to generally accepted accounting principles, except for three items to-wit:

(a) Patents which were carried on the books of the old company on September 21, 1945, at $7,833.98, were written down to $1. in the report of August 7, 1947. Patents should be restored to the balance sheet in the amount of $7,833.98. The effect of this, eliminating the tax reduction occasioned by the write-down, is to increase the net worth of the old company by the net sum of $5,000.

(b) Industrial diamonds were written down to $9,993.55 from the book value of $12,924.78, and such diamonds should be carried at book value. This correction will increase the net worth by $2,931.23.

(c) In the audit report of August 7, 1947, fixed assets were reduced in the amount of $37,265.37, of which Baumann, Finney & Company verified $14,785.95. The unverified portion, amounting to $22,479.42, should be restored to the balance sheet. This restoration, eliminating the tax reduction occasioned by such write-down, increases the net worth of said company by the net sum of $12,000.00.

17. Baumann, Finney & Company, who made the audit, are one of the larger auditing concerns in the United States. They bear an excellent reputation for integrity and accuracy. The work of this particular audit was supervised by Mr. Louis Werner, one of the partners of the firm. He is competent, honest and thorough. He spent approximately a thousand hours in preparing the final audit. He was rigidly cross-examined by well qualified counsel. After hearing his testimony, the court was convinced that he made a good faith, honest attempt to arrive at the net worth of the company as of September 21, 1945.

18. As an example of the conscientious and proper manner in which the audit was prepared, it appears that the item set up in the balance sheet of August 7, 1947, of $300,000. for reserve for contingencies, was later reduced to $176,806.51, because of the information that Mr. Werner and his associates received subsequent to the time the August 7th report was made.

19. During the time that Baumann, Finney & Company were engaged in preparing the report, each of the plaintiffs had ample opportunity to observe the operation of the accountants, and at times were urged by one of defendant's representatives to have the audit being made by Baumann, Finney & Company, and the inventory on which the audit is partially based, checked by independent auditors.

20. The plaintiffs were both experienced businessmen, who had been engaged in extensive business operations. The firm of Baumann, Finney & Company was selected by plaintiffs and defendant jointly.

21. According to generally accepted accounting principles, the net worth of the old company as of September 21, 1945, was $767,583.32. The difference between the

net worth of the old company as of September 21, 1945, and the "guaranteed net worth" provided for in the guarantee agreement is $98,179.24.

22. Interest on said sum of $98,179.24 from February 22, 1948, to and including January 23, 1951, at the rate of 5% per annum, is $14,059.93.

23. Guy G. Bratton is holding all of the securities and funds in his possession as escrowee, subject to the determination of the rights of the parties in this proceeding, and has submitted these securities and funds to the jurisdiction of this court.

### Conclusions of Law

1. The court has jurisdiction of the action and of the counterclaim and of the parties thereto because of diversity of citizenship and amount involved under 28 U.S.C.A. § 1332.

2. There being no audit made by H. G. Mounteer & Company as of February 28, 1945, the sentence in Paragraph 2 of the guarantee agreement reading, "The audit to be prepared by Baumann-Finney & Company as in this paragraph provided shall be taken and made on the same basis as the audit of February 28, 1945, made by H. G. Mounteer & Company, of Detroit, Michigan," did not provide any standard under which the audit by Baumann, Finney & Company should be made.

3. Where, as here, an agreement provides for determination of net worth of a business by an audit to be made by designated certified public accountants, and such agreement specifies no standard to which such audit must conform, the agreement should be interpreted as meaning that the audit shall be made according to generally accepted accounting principles.

4. Under the provisions of said guarantee agreement and according to generally accepted accounting principles, it is proper in determining the net worth of the old company as of September 21, 1945, to consider and give effect to all knowledge of facts acquired prior to the agreed date for final determination, October 15, 1947, affecting the value of the assets or the amount of the liabilities of the old company as of September 21, 1945.

5. The plaintiffs, jointly and severally, are required to pay to defendant upon its counterclaim the difference between $865,762.56, being the amount of net worth guaranteed by plaintiffs in said guarantee agreement, and $767,583.32, being the net worth of the old company as of September 21, 1945, as determined in finding of fact No. 21, such difference being $98,179.24.

6. The plaintiffs are required to pay to the defendant upon its counterclaim interest at the legal rate of five per cent per annum on said amount of $98,179.24 from February 22, 1948, to and including the date of judgment herein, and such interest should be included in the amount of judgment. M.S.A. § 19.11, Comp.Laws 1948, § 438.51.

7. Guy G. Bratton, as a defendant to the counterclaim and escrowee under said guarantee agreement, is required to deliver to defendant, in partial satisfaction of the foregoing amount of $98,179.24, together with interest, all securities, moneys and other collateral now held by said Bratton as such escrowee, whether deposited with him by plaintiffs initially or having come into his possession subsequent to such initial deposit; such securities, however, to be applied at their par value.

8. Guy G. Bratton is not entitled to any fees or other compensation as escrowee under the guarantee agreement.