### Combs et al. v. Thomas et al.

### Moore et al. v. Combs et al.

### Combs et al. v. Moore et al.

February 14, 1947.

Rehearing denied May 20, 1947.

Roy Helm, Judge.

J. B. Eversole for R. B. Combs et al.

Wm. Lewis, Ray C. Lewis and I. A. Bowles for G. C. Thomas et al. and Mary Moore et al.

Barney W. Baker and Jesse Morgan for Mary Combs et al. and S. B. Combs et al.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This suit was begun in April, 1929, by Mary Thomas and six other children of Preston Eversole against the widow and children of D. Y. Combs to quiet title to 400 acres of land in Perry County on the waters of Big Creek and in the watershed of Ben's Branch. It was part of the land conveyed to Preston Eversole by his father, Woolery G. Eversole, on February 5, 1878. The D. Y. Combs family claimed title through mesne conveyances from Preston Eversole by his deed to Dock Fields, September 17, 1888. We reversed a judgment dismissing the petition on demurrer in Thomas v. Combs, 259 Ky.

93, 82 S. W. 2d 188, construing the deed of Woolery G. Eversole as granting only a life estate to Preston with remainder to his heirs. With this source of title knocked out, the claims were rested on original grants from the Commonwealth. Subsequently many issues were raised as to superiority of patents and conflict in boundaries. Also as to adverse possession. A third group of parties, headed by Robert B. Combs, intervened in June, 1941. They claimed title as the heirs of William B. Combs who died in 1865.

Through the years the case was on the docket, many of the original parties died or disposed of their interests and their heirs and grantees were substituted. Preston Eversole also died, although he was never a party to the suit. He had given a deposition, however. D. Y. Combs' family conveyed part or all of their interest in the land to S. B. Combs in 1930, so he has proceeded with the lawsuit he thereby purchased. Notwithstanding these changes and because of the number of them, in the interest of conciseness, we shall refer to the three respective groups as Eversole Heirs, D. Y. Combs Heirs and Grantees, and William Combs Heirs.

Judgment went for Eversole Heirs except a 2/7ths interest covered by conveyances which two of them had made to D. Y. Combs, and which was awarded to D. Y. Combs Heirs and Grantees. The William Combs Heirs were dismissed without anything. The court located the boundaries and described 267 acres which, as we understand, it was eventually disclosed the tract contained. (The surveys, however, show the area to contain 255.98 acres.) Three different appeals have been consolidated. Although the submission of the case has twice been set aside with directions to the attorneys for all parties to re-brief it in accordance with the rules of the court, none of them have done so in a satisfactory manner or in a way that would be more helpful to an understanding of a confusing record. Counsel for Eversole Heirs completely ignored both orders. The Points and Authorities in all the several briefs are nothing more than general indexes with citations of cases. Rule 1.340 calls for "a concise statement of classification of the questions discussed * * * separately and clearly stated with the authorities relied upon subjoined." These statements should be something more than an index to the brief

and more than mere abstract or conclusory statements of the writer's contentions with respect to the facts and law. Each should be so formulated that it states enough of the factual setting to indicate that the legal conclusion or contention has merit. The syllabi of an opinion are quite analogous, and generally may serve as a pattern. The same rule, 1.340, requires "exact reference" in briefs to pages of the record supporting concise statements of pleadings and facts in issue and the arguments relating to them. This rule has not been followed in all the briefs. The court ought not to have to grope in the dark through a record or a brief (sometimes misnamed literally) that has no classification or indication of the contentions. Doubtless if counsel for Eversole Heirs had observed the rules and the orders of this court they would have discovered that the amended petition referred to in their brief as claiming ownership of 256 acres was not filed and is not in the record. Most of their original brief is anticipatory of arguments to be made by their adversaries, some of which did not appear.

The case involved the interpretation and location of five surveys and patents, viz.: (1) to Robert Williams, 50 acres, December 2, 1825; (2) to J. H. Duff, 100 acres, June 28, 1843; (3) to William B. Combs, 600 acres, July 15, 1846; (4) to Jackson Combs, 3,500 acres, August 9, 1846; and (5) to Woolery G. Eversole, 1,500 acres, August 18, 1847. Several other patents were brought into the case, some apparently without relevancy unless for the purpose of multiplying the confusion. It is manifest that part of the land in dispute was covered by the five different patents. Differences in the maps and testimony of the surveyors cannot be reconciled by us. The most westerly point on the Woolery Eversole patent is Farler or Farley Gap, a long way from the land in dispute, but it seems to be a key corner. Just where or what is this Gap, referred to in the original survey, is not certainly known in local tradition or geography. The Circuit Court analyzed the evidence and found the Gap to be at the end of the 21st and the beginning of the 22nd call of the Woolery Eversole 1,500 acre patent. He was of opinion that in the original survey the lines were run from the beginning point to the Gap and that the other staked lines back to the beginning were merely projected. Applying legal rules for surveying or interpreting sur-

veys (Chambers v. Tharp, 93 S. W. 627, 29 Ky. Law Rep. 271) the court found this would require a revision of the recent surveys upon which D. Y. Combs Heirs and Grantees and the William Combs Heirs rest their claims. His reading and analysis of the conflicting calls and plats removes the land in dispute from the overlap of the Jackson Combs patent. The result is the conclusion that the Eversole patent exclusively covers a substantial part of the land involved, the rest being also covered by the Duff and Williams patents, both of which had been acquired by Eversole. Thus the court found the land in dispute to be embraced in the deed of Woolery G. Eversole to Preston Eversole for life with remainder to his heirs, of date February 5, 1878. He apparently did not consider the mass of evidence relating to adverse possession.

1. We do not understand why Eversole Heirs have prosecuted an appeal. They criticise the court's method of reading the surveys and location of the Gap, with consequent effect on the Woolery G. Eversole patent, and say the judgment is erroneous and prejudicial to themselves. But they do not tell us how they are prejudiced. The court denied their adversaries any relief or recovery whatsoever except the 2/7ths interest, which was conceded by these appellants to D. Y. Combs Heirs and Grantees.

2. The William Combs Heirs claimed title under the Wm. B. Combs 600-acre patent of July 15, 1846, which is older than the Jackson Combs and Woolery Eversole grants but junior to the Williams and Duff grants. It is made quite clear that Woolery Eversole settled on this land in 1845, and lived on the part covered by the Duff survey before Wm. B. Combs patent was issued, and, of course, before he (Eversole) obtained his 1,500 acre grant embracing the same land. These appellants really rest their claim to land outside the Duff and Williams surveys on adverse possession, and while they question the proof of adverse possession of some of the land by their adversaries, they do not point out, and we have not discovered, any substantial evidence that possession was ever taken under the William Combs patent by anybody.

3. The D. Y. Combs Heirs and Grantees argue that

the possession of Woolery Eversole and his family never extended in fact or in law beyond the Duff survey over onto the rest of the Jackson Combs survey outside the Duff grant, their claim being founded on the Jackson Combs patent. It is argued that D. Y. Combs and his predecessors had adverse possession of all of that land except a small area on which the Eversoles lived. Again we run into confusion and contradictory evidence of possession.

Be it remembered that these appellants and their predecessors fought for title to this land for years under the deed which Woolery Eversole made to his son, Preston, February 5, 1878, and a fee simple deed by Preston to Fields September 17, 1888, by him to McClintock, and by him to D. Y. Combs, right down to 1931, when they procured a judgment confirming that title, and from that time on in this court until our first opinion in the case was rendered in 1935 reversing that judgment by construing Woolery's deed to Preston to have granted him only a life estate with remainder to his children, whom we know in this record as Eversole Heirs. About the year 1913 or later, D. Y. Combs bought the rights of two of these children and tried to buy the others, representing to all of them that he owned all the land except a 14-acre parcel. He exhibited as evidence of title what was apparently the original deed from Preston. It was not placed of record until 1918, and its genuineness was questioned in this suit. Possession by D. Y. Combs under that deed was, of course, as life tenant (as subsequently held) and he could not have acquired title by adverse possession against the remaindermen except by positive and extraordinary notice and assertion of exclusive ownership. Russell v. Tipton, 193 Ky. 305, 235 S. W. 763. No sort of notice appears to have been given. It was not until their answer was filed in this case in June, 1941, that claim was made under the Jackson Combs Patent. It seems to us that claims under that patent were abandoned years ago. It cannot be said that acquiring the deed from Preston, and later deeds from two of the seven heirs who owned the remainder, were merely to remove a cloud or to buy peace and protect a possession from antagonistic or adverse claimants under a different chain of title. If that were all, they would not be estopped to claim through another

chain, i. e., the patent. Field v. Klete, 10 Ky. Op. 360; Cavin v. Little, 213 Ky. 482, 281 S. W. 480; Warfield Natural Gas Co. v. Ward, 286 Ky. 73, 149 S. W. 2d 705. But where adverse claimants to land trace their chain of title to a common source, each is estopped as against the other to deny that common grantor's title, for one may not impugn the title under which he holds. Since D. Y. Combs Heirs and Grantees and their predecessors relied on a title deducible from Woolery G. Eversole, they are estopped to deny his title, and consequently to deny title in those who claim through him upon the ground of Woolery's defect or failure of title. 19 Am. Jur., Estoppel, Sec. 24; 31 C. J. S., Estoppel, sec. 15, p. 199; Ray v. Barker's Heirs, 40 Ky. 364, 1 B. Mon. 364; Sewell v. Dykes, 233 Ky. 573, 26 S. W. 2d 502.

This case is close to Ray v. Barker's Heirs, supra, decided in 1840, during the period when so much of Kentucky land law was being declared. Ray had entered into possession of a tract under his own patent and claimed it adversely to Barker. It developed that Ray's patent was junior to Barker's patent. Ray made an arrangement with Barker's heirs by which he claimed in amity with or under their title. In the later contest it was held that to be entitled to superior title Ray must have held his own patent adversely to the Barkers and that it was not sufficient that he held possession under both titles. In the case at bar D. Y. Combs entered into actual possession under Woolery Eversole's title through Preston's deed and mesne conveyances and throughout the years claimed possession under it as the owner of a fee simple title to the land. So he could not question Woolery Eversole's title or the remainder interest of Preston's children. "Nor," as said in the Ray case, "will it suffice that he has held possession under both titles." Therefore, as to D. Y. Combs Heirs and Grantees the judgment might well have been placed on the ground of estoppel.

On all three of the appeals, the judgment is affirmed.