## Hicks et al. v. Combs et al.

June 3, 1949.

Rehearing denied November 1, 1949.

150

Napier & Napier, C. W. Napier and C. W. Napier, Jr. for appellants.

Clark Pratt for appellees.

STANLEY, COMMISSIONER—Reversing.

This suit was evolved into one by Cullen Combs, Kelly Combs and Clara Combs against Riley Hicks and Luna Hicks to quiet title to an unidentified portion of a tract of land, described generally. The defendants counterclaimed and asserted their title. Judgment went for the plaintiffs and the defendants appeal.

The bitter controversy is over title to what is variously stated to be two to eight acres of land on Montgomery Creek in Knott County. It seems to be regarded as part of the curtilage of Riley and Luna Hicks, and it lies equally as close to the residence of Cullen and Clara Combs. Questions of overlap, of location of division lines, of priority of record title, and of adverse possession have been fought out. There are complications of champerty and after-acquired titles and hopeless contradictions in the evidence. We do not find it necessary to determine these controversies for we conclude that the plaintiffs so acquiesced in the defendants' claim of title as to be estopped to deny it.

The defendants and their predecessors in title have maintained that the parcel in controversy is included in their tract of 82.75 acres. Robert Terrell bought the tract from H. H. Smith and B. F. Combs in September, 1941, for $500, the minerals and timber being excluded. He gave them a note for $300 secured by a vendor's lien. In Terrell's deed of this land to Riley and Luna Hicks, of date January 26, 1942, they assumed the payment of the lien note on which there was a principal balance of $250. Smith testified that Cullen Combs had come to him and claimed a conflict in title and that he had the older deed, as he called it, executed by Grant Combs. They examined the record together in the clerk's office and he, Smith, had shown him that the Hickses had the older record title. "A few days or a few weeks" after that Cullen Combs again came to him and wanted to buy the purchase money note above referred to which had been assumed by the Hickses. He paid the amount due, $262.50, and had the note assigned or transferred to his wife, Clara Combs. This was on January 30, 1943. At that time plaintiffs' land was claimed to be owned by Kelly Combs and Cullen Combs jointly. Cullen Combs later conveyed his interest to his wife, Clara Combs. Before this, the defendants testified that Cullen

Combs had tried to buy the parcel from them, but Cullen denies doing so.

Clara Combs filed a suit against Riley and Luna Hicks on the note which had been assigned to her and sought to foreclose the vendor's lien. Hicks obtained the money on a mortgage from a third person and paid off the obligation before judgment. Six months after this transaction the present suit was filed to quiet title and enjoin trespass.

The doctrine of equitable estoppel is applied to transactions in which it would be unconscionable to permit a person to maintain a position which is inconsistent with one in which he has acquiesced. Simpson v. Yocum, 172 Ky. 449, 189 S. W. 439; 19 Am. Jur., Estoppel, sec. 62. A party may be estopped to insist upon a claim or take a position which is inconsistent with an admission or denial of a fact which he has previously made or with a course of conduct in reliance upon which the other party changed his position to his detriment or prejudice. This principle overlaps another. Where one accepts and retains benefits of a transaction or of an instrument which he was not required to take, an estoppel operates to prevent the party that benefited from questioning the validity of the transaction or basis of it. Bush v. Chenault's Ex'r, 175 Ky. 598, 194 S. W. 777; Farmer v. Gipson, 201 Ky. 477, 257 S. W. 1; Wabash Drilling Co. v. Ellis, 230 Ky. 769, 20 S. W. 2d 1002; Pettit's Adm'r v. Goetz, 261 Ky. 107, 87 S. W. 2d 99; 19 Am. Jur, Estoppel, sec. 63, 64; 31 C. J. S., Estoppel, secs. 108, 109 and 110b.

Therefore, upon the authority of the Supreme Court of the United States, it is said in 36 Am. Jur., Mortgages, sec. 257: "The general rule is that a person who takes a mortgage on property thereby admits the title of the mortgagor covered by the mortgage and is estopped from contesting the mortgagor's title." Wills v. Windish, 106 N. J. Eq. 449, 151 A. 212; 31 C. J. S., Estoppel, secs. 16, 110b. It is conceivable that one may acquire a mortgage or other lien on property without knowing that it embraces land which he owns or claims to own. The fact of innocence would probably save him from the operation of estoppel. But if one, as a purchaser of mortgaged property, takes an assignment of the lien

and of the debt secured, the debt is extinguished. 37 Am. Jur., Mortgages, sec. 13, 24. One does not knowingly take a mortgage or acquire by purchase a lien on his own property except to liquidate the debt and remove the encumbrance. The deed in which the lien acquired by these plaintiffs was reserved recited the title being conveyed by metes and bounds and clearly embraced the part in controversy. It placed that title in the grantee, Terrell, and he in the same form placed it in Riley and Luna Hicks subject to the lien described. As Smith and Combs would be estopped by recitals in their deed, so also are the plaintiffs as privies of the grantors. Wabash Drilling Co. v. Ellis, supra, 230 Ky. 769, 20 S. W. 2d 1002. The lien which the plaintiffs bought from Smith and Combs gave sanction to the very title of the Hickses then being challenged and soon to be denied by the institution of this suit. One is estopped to question his grantor's title for he may not impugn the title under which he holds. Combs v. Thomas, 304 Ky. 654, 201 S. W. 2d 557. Upon the same reasoning one may not question title of another whose mortgage upon the same land he seeks to enforce for a mortgage is in a sense a grant. By taking over the vendor's lien the plaintiffs assumed the position of the vendors or grantors, Smith and Combs, who under well established principles could not question the title which they had conveyed to Terrell and he had conveyed to the Hickses. Shaver v. Ellis, 226 Ky. 806, 11 S. W. 2d 949.

Here, in the instant case, is not mere knowledge but a vigorous contention being waged at the time as to title to part of the mortgaged land. Though Mrs. Combs testified their purpose in acquiring this lien was to get the main body, or the other part, of the land, we are of opinion that the lien note was purchased with the deliberate purpose of pressing down upon the Hickses and to obtain an advantage, or more probably, to get title through foreclosure. The very same day that this lien debt was acquired the foreclosure suit was instituted. Then the parties took the money from the adverse claimants of the land in payment and followed that up with this suit to have them declared not to be the owners. The Hickses certainly relied upon the action as recognizing their title. Otherwise they would have refused to pay the debt and release their property from the lien.

No court could sanction such unconscionable conduct. Rather, we must hold that the transaction was a very effectual admission that the Hickses had title to the property and that there was an acquiescence in their claims. The particular question is of novel impression in this state but close to it is the decision in Young v. Venters, 229 Ky. 806, 18 S. W. 2d 277, that a purchaser at an execution sale who accepts redemption money from one who believed she has purchased the redemption right may not retain the money and at the same time claim title to the property.

It seems clear to us that the plaintiff, Clara Combs, is estopped to deny the defendants' claim of title.

The question arises as to the plaintiff, Kelly Combs, the owner of a half interest in the property of which he claims the parcel involved is a part. It appears, that for a long time prior to Terrell's conveyance to Hicks, Kelly Combs had been in constructive or actual possession of the tract under some kind of allotment of land of his father, Jeremiah Combs, deceased. On July 17, 1942, Kelly Combs conveyed an undivided half interest in the land to his son, Cullen Combs, and on the same day executed a general power of attorney to Cullen empowering him ''to do and perform any or all acts for use and in our name that we might do at present * * concerning or involving in any manner our rights to or interest in'' the real estate of Jeremiah Combs. It is very broad and includes specifically the power to institute and defend suits. This was the status of the title when Cullen Combs went to Mr. Smith claiming title to the parcel involved. About that time, on June 23, 1943, Cullen Combs conveyed his half interest to his wife, Clara, and had the note assigned to her on June 30. In all these negotiations and transactions Cullen Combs was speaking in a dual capacity, for both himself personally and his co-owner under the power of attorney. The rule of estoppel covers the principal of an agent when he acts within the scope of his agency. The principal cannot deny the transaction of his agent (Bigelow on Estoppel, p. 619), nor an attorney in fact where he personally succeeded to the rights of his principal. Kentucky Coke Co. v. Keystone Gas Co., 6 Cir., 296 F. 320, certiorari denied 266 U. S. 605, 45 S. Ct. 92, 69 L. Ed. 464. In acquiring the vendor's lien on June 30, 1943,

Cullen Combs was also undoubtedly acting for his father and his wife. The rule of estoppel to assert an interest in real estate goes even further than stated. It may be applicable under the circumstances where a party has encouraged or instigated or participated in the transaction. Overcast v. Lawrence, 141 Ky. 25, 131 S. W. 1029; Chapman v. Majestic Collieries Co., 216 Ky. 652, 288 S. W. 299. And Kelly Combs through his agent certainly did that.

We are of opinion that the judgment should have gone for the defendants. Judgment reversed.