**WARD et al. v. FLEX–O–TUBE CO.**

No. 11381.

United States Court of Appeals
Sixth Circuit.

Feb. 6, 1952.

J. Thomas Smith and Pell Hollingshead, Detroit, Mich. (Smith & Huffaker, Detroit, Mich., on the brief; Carroll C. Grigsby, Detroit, Mich., of counsel), for appellants.

Fredric H. Stafford, Chicago, Ill. (Beaumont, Smith & Harris, Alfred E. Lindbloom, Detroit, Mich., Pam, Hurd & Reichmann, Fredric H. Stafford, Chicago, Ill., on the brief), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

On September 15, 1945, the appellants who were the owners of all the outstanding capital stock of the Flex-O-Tube Company, a Delaware corporation, sold said stock to the appellee, the Flex-O-Tube Company, an Illinois corporation, formerly known as the Tetrarch Corporation, and, as a part of said transaction, entered into a written contract of guaranty with the appellee, by which the appellants guaranteed that the net worth of the assets of the Delaware company on September 15, 1945, was not less than $865,762.56, and also agreed to pay any deficiency therein as disclosed by an audit as of said date by Bauman, Finney & Company, independent certified public accountants of Chicago, Illinois. This date was later changed by mutual consent to September 21, 1945. As a part of said guaranty, appellants deposited $80,000 par value first mortgage bonds with Guy G. Bratton, as depositary, by way of pledge to secure the performance of said guaranty. The present suit, filed as a declaratory judgment action, involves the issue whether the appellants complied with the terms of their guaranty and were entitled to the return of the mortgage bonds so deposited. Appellee, by answer, denied that the guaranty had been complied with, and by counter-claim sought judgment against the appellants for approximately $365,135 by reason of the deficiency in the net worth of said Company, and asked that Bratton, the depositary, be required to deliver the first mortgage bonds to them in partial satisfaction of said deficiency.

The facts, including the material paragraphs of the guaranty, are set out in detail in the Findings of Fact and Conclusions of Law of the District Judge, reported in D.C., 94 F.Supp. 883. As shown by said Findings, the District Judge found that according to generally accepted accounting principles, the net worth of the Company, as of September 21, 1945, was $767,583.32; that the difference between said net worth and the guaranteed net worth was $98,179.24, for which amount judgment was entered for the appellee with interest at 5% from February 22, 1948. The judgment also ordered Bratton, the depositary, to deliver the first mortgage bonds to the appellee to be applied as a credit on the judgment at their par value. This appeal followed.

In accordance with the guaranty provisions, Bauman, Finney & Company undertook to make the audit. It issued a preliminary report dated January 22, 1946, which was superseded by a report dated February 15, 1946. This showed a net worth of the Company as of September 21, 1945 of $886,496.23. Another report was made on August 7, 1947 and a still later report was made on February 3, 1948. The report of August 7, 1947 established the net worth of the Company at the close of business on September 21, 1945 as $659,508.60. This report did not give effect to the ultimate determination of income tax deficiencies and renegotiation refunds. The report of February 3, 1948 gave effect to these final transactions and fixed the net worth of the Company as of September 21, 1945 at $747,652.09. It will be seen from the above that the report of February 15, 1946 disclosed a net worth in excess of the guaranteed amount, while the reports of August 7, 1947 and February 3, 1948 showed a net worth materially less than the guaranteed amount. Appellants' principal contention on this appeal is that the report of February 15, 1946 was the report contemplated by the written guaranty of September 15, 1945 and satisfied the terms of the guaranty. Appellee contends that this report was not the final audit contemplated by the guaranty and that the net worth of the Company as of September 21, 1945 was not finally determined as contemplated by the guaranty until the re-

port of February 3, 1948. The District Judge found that the report of February 15, 1946 was a preliminary report and that the report of August 7, 1947 as modified by the report of February 3, 1948 correctly determined the net worth of the Company as of September 21, 1945 according to generally accepted accounting principles except, to the three items of patents, industrial diamonds, and fixed assets. Giving effect to changes in these three items, the District Judge found the net worth of the Company as of September 21, 1945 to be $767,583.32.

We are of the opinion that this finding of the District Judge, if treated as a finding of fact, is supported by the evidence, is not clearly erroneous and must be accepted on this appeal. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Appellants contend that the ruling is not a finding of fact, but is a conclusion of law based upon evidentiary facts not in dispute and so subject to unrestricted review by this Court. We find it unnecessary to decide whether the ruling is a finding of fact or a conclusion of law. If it should be considered as a conclusion of law, we also agree with the ruling of the District Court. In our opinion, the correspondence between the parties, the testimony of the accountants, and the conduct of the parties themselves, all of which are reviewed somewhat at length in the briefs, lead to the conclusion that the report of February 15, 1946 was a tentative report, necessarily leaving several matters undisposed of which materially affected the final determination of the net worth of the Company as of September 21, 1945.

In transmitting this report to the appellants by letter of February 20, 1946, appellee's president stated that it "should be received and examined in the light of memorandums you have previously received from me indicating that the net worth shown is tentative. * * *" These memorandums referred to inventory deficiencies, income tax deficiencies and renegotiation refunds as being still unsettled. With respect to inventory deficiencies it had been pointed out by appellee that by reason of

errors in calculation, the necessity of a recount of hose, and additional obsolescence, the physical inventory of commercially saleable merchandise was substantially below the amount contemplated in the guarantee of net worth. Appellee had suggested that appellants arrange to employ audit representatives to review the write-offs of inventory which had been made and would welcome and co-operate fully with such an examination. In a letter of February 5, 1946, appellee's president stated "A revised audit report is now being prepared and it also will state the inventory write-offs have not been verified." This referred to the forthcoming February 15, 1946 report. In a letter to appellants dated February 7, 1946, it was stated: "The Net-Worth as of September 21, 1945, shown in the audit report now being revised, will be subject to adjustment for profit on Termination Claims, Renegotiation Refund and Income Taxes. * * * In our opinion, the guaranteed net worth can still be met, but we won't know definitely until the Renegotiation Refund for the fiscal year ending April 30, 1945 is settled."

A memorandum of February 14, 1946 pointed out that a question had been raised by the Bureau of Internal Revenue regarding depreciation rates and repair expenses for the years 1942, 1943 and 1944, the determination of which would affect the question of net worth. No provision was made for these claims in the February 15, 1946 report, which set up a reserve of $565,338.-73 for taxes for year ending April 30, 1945 and stated "Federal income and excess profits tax returns for years subsequent to April 30, 1941 are subject to review by the Treasury Department." Tax deficiencies for 1942, 1943 and 1944 were recognized in the August 7, 1947 report, although still undetermined, which set up a reserve for taxes of $479,248.81 for the years ending April 30, 1946, plus an additional contingent reserve in the amount of $300,000. The actual tax liability was not shown until the report of February 3, 1948, following settlement with the Treasury Department. This showed the total tax liability to be $656,-055.32, exclusive of interest. This resulted in a material liability in excess of the tax.

reserve set up in the February 15, 1946 report. Accordingly, appellants' contention that the appellee had no right to rely on contingent tax deficiencies for 1942, 1943 and 1944 as a ground for not accepting the February 15, 1946 report as satisfactorily showing the net worth of the Company, in that such tax deficiencies were adequately cared for by the tax reserve in that report, is not well taken.

Appellee's judgment that the tax reserve in the February 15, 1946 report was possibly insufficient and that a determination of net worth should not be final and acceptable until such contingent liabilities had been settled, was authorized by the warranty agreement. The agreement recognized the right of the appellee to consider not only possible impairment in the values of accounts receivable, sundry receivables, inventory, investments and claims in favor of the Company, but also "the remaining items on the balance sheet" in determining whether it was satisfied with the reported net worth, and if not satisfied to defer a final determination until not later than October 15, 1947.

Appellants admit that under the written guaranty it was necessary for the guarantors to satisfy the appellee of the guaranteed net worth of the Company, but contend that such satisfaction resulted as a matter of law from the report of February 15, 1946, which disclosed a net worth in excess of the guaranteed amount. They rely upon the rule that in contracts calling for performance to the satisfaction of one of the parties if the subject matter involves a question of fancy, taste or judgment the party receiving performance is the sole judge of his satisfaction, but where the subject matter of such a contract involves a question of commercial value, operative or mechanical fitness, or quality, or other like considerations, rather than personal satisfaction, satisfaction is accomplished if performance is such that it should be satisfactory to a reasonable man. They contend that this report involved merely a question of commercial values and showed compliance with the guaranty to a reasonable man. The rule appears to be well settled and is not disputed by the appellee. We agree with the contention of appellee that this was a case involving business judgment, including the evaluation of potential or uncertain liabilities, rather than one involving mere operative or mechanical fitness or established commercial values, and that therefore the report of February 15, 1946 did not constitute on the part of the appellee legal satisfaction of the net worth of the Company, when the appellee, in the exercise of its business judgment in the matter, took the position, due partly to transactions not yet completed, that it was not at that time satisfied that the net worth of the Company equalled the guaranteed amount.

Appellants contend that the appellee is estopped to deny that the net value of the assets of the Company was less than $882,068.97, for the reason that in the annual report of the appellee corporation for 1946, filed with the Michigan Corporation and Securities Commission as required by the Michigan General Corporation Act, M.S.A. 21.82, Comp.Laws 1948, § 450.82, the appellee reported the value of such assets as being $882,068.97. Appellants do not contend that the filing of this report constituted equitable estoppel or estoppel in pais, which is based on detrimental reliance, but contend that it is a form of estoppel by deed or estoppel by record. Higgins v. Hampshire Products, Inc., 319 Mich. 674, 30 N.W.2d 390, 175 A.L.R. 1083. It seems clear to us that it does not constitute an estoppel by deed which is ordinarily limited to the parties to an instrument of conveyance. Gilmer v. Poindexter, 10 How. 257, 267, 13 L.Ed. 411; Hicks v. Combs, 311 Ky. 149, 152, 223 S.W.2d 379, 11 A.L.R.2d 1393. In a similar way an estoppel by record is usually restricted to a judicial record or a legislative record. Although it might have some evidentiary value as an admission, we are of the opinion that in the absence of any showing of reliance by the appellants to their detriment on the facts stated in such corporate report, the filing of the report by the appellee corporation, giving values as were then shown by its books, does not constitute an estoppel in

a matter involving the construction and performance of a contract entered into prior to the making of the report. Higgins v. Hampshire Products, Inc., supra, relied upon by appellants, involves an element of reliance upon the recorded instrument.

Appellants further contend that the appellee failed to meet the burden of proof resting upon it to establish with any degree of certainty the net worth of the Company, as of September 21, 1945, which was a prerequisite to a finding of any deficiency. However, the District Judge made a finding of such net worth, which showed such a deficiency to exist, and which, in our opinion, is supported by the evidence and is not clearly erroneous. Rule 52(a), Rules of Civil Procedure.

Judgment is affirmed.