**MIKE NAUGHTON FORD, INC., a Colorado corporation, and Courtesy Ford, a Colorado partnership, Plaintiffs,**

v.

**FORD MOTOR COMPANY, a Delaware corporation, Defendant.**

Civ. A. No. 92 N 1702.

United States District Court,
D. Colorado.

July 25, 1994.

---

Janet T. Ward, Bosworth & Kelly, P.C., Frederic K. Conover, II, Michael J. Cook, Catherine A. Lemon, Faegre & Benson, Ar-

thur H. Bosworth, II, Arthur Bosworth & Associates, P.C., Denver, CO, for Barbee Ford, Inc., Mike Naughton Ford, Inc. and Courtesy Ford.

Janet T. Ward, Bosworth & Kelly, P.C., Arthur H. Bosworth, II, Arthur Bosworth & Associates, P.C., Denver, CO, for Mo–Ter, Inc., Friendly Ford, Inc., Lakewood Ford, Inc., Sill–Terhar Motors, Inc.

Boyd N. Boland, Charles J. Kall, Richard L. Schrepferman, Holme Roberts & Owen, L.L.C., U.S. Dist. Court, Denver, CO, for Ford Motor Co.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is primarily a breach of contract case. Plaintiffs, two Colorado automobile dealers, challenge defendant manufacturer's proposed appointment of a new franchise in the same vicinity as plaintiffs' existing dealerships. Plaintiffs assert the following claims for relief: (1) breach of contract; (2) violation of the Colorado Automobile Dealers Act, Colo. Rev.Stat. §§ 12–6–101 to –303 (1991 Repl. Vol. & 1993 Cum.Supp.); and (3) breach of the implied covenant of good faith and fair dealing. This matter is before the court on "Defendant's Motion for Summary Judgment" filed February 10, 1993. Jurisdiction is based on 28 U.S.C.A. § 1332 (West 1993).

## FACTS

Plaintiffs Mike Naughton Ford, Inc. and Courtesy Ford are motor vehicle dealers located in southeast Denver, Colorado. (First Am.Compl. ¶¶ 2–3 [filed Nov. 24, 1992] [hereinafter "Am.Compl."].) As a prerequisite to obtaining their respective dealerships, plaintiffs entered into identical franchise agreements with Defendant Ford Motor Company ("Ford"). (See Br. in Supp. of Def.'s Mot. for Summ. J. [hereinafter "Def.'s Br."], Statement of Undisputed Material Facts ¶ 1 [Am. Compl. ¶ 7] [hereinafter "Def.'s Statement"] [filed Feb. 10, 1993].)[1] The franchise agreement generally defines the rights and obligations of the respective parties concerning the establishment and location of Ford dealerships in the same locality. (See generally Def.'s Br., Ex. A [Ford Sales and Service Agreement].)

At different times during the preceding fifteen years, three franchisees have operated Ford dealerships near Interstate 25 between Arapahoe Road and County Line Road in southeast Denver. (See Def.'s Statement ¶ 3 [Am.Compl. ¶ 17].) This geographical area, which covers a radius of approximately three and one-half miles, is generally known as the "Arapahoe Road/County Line Road distribution point." (See id.) The ownership and specific location of these dealerships have changed over time, apparently in response to unfavorable market conditions and other business concerns.

In 1979, the first franchisee, Hover Ford, relocated its previously established dealership to a site on Arapahoe Road near Interstate 25. (See Def.'s Statement ¶ 4 [Compl. ¶ 12 (filed Aug. 26, 1992) (hereinafter "Compl.") ].) Hover Ford ceased its operations in 1981. (Id.) In 1985, after a period of approximately four years in which the distribution point remained unoccupied, Ford awarded a franchise to Leo Payne Ford. The Leo Payne dealership was located near Interstate 25 and County Line Road, between one and two miles from the former Hover Ford location on Arapahoe Road. (See Def.'s Statement ¶¶ 5–6 [Compl. ¶ 12].) In 1988, Grooms Automotive purchased the Leo Payne dealership and thus became the third Ford dealer to occupy the Arapahoe Road/County Line Road distribution point. (See Def.'s Statement ¶ 6 [Compl. ¶ 12].) The distribution point has remained unoccupied since Grooms Automotive closed its business in November 1990. (See id.)

On June 17, 1992, Ford signed a "letter of intent" stating its plan to award a franchise to Arapahoe Ford, Inc. ("Arapahoe Ford"). The new dealership would be located near Interstate 25 on Arapahoe Road, between seven and ten miles from plaintiffs' respective franchises. (See Def.'s Statement ¶ 7.) Plaintiffs argue that the southeast Denver market cannot reasonably support the addition of Arapahoe Ford given the current

1. Plaintiffs did not object to Ford's "Statement of   Undisputed Material Facts."

unfavorable market conditions, as demonstrated by the failures of the dealerships that previously operated in the Arapahoe Road/County Line Road area. (*See* Br. in Opp'n to Def.'s Mot. for Summ. J. at 1 [filed Mar. 15, 1993] [hereinafter "Pls.' Resp."].) Plaintiffs maintain that the award of a franchise to Arapahoe Ford under these circumstances constitutes: (1) a breach of the franchise agreement with respect to the provisions concerning the appointment of "additional" dealers in the same locality; (2) a violation of section 12–6–120(1)(h) of the Colorado Revised Statutes, which governs the establishment of "additional" automobile dealerships; and (3) a breach of the implied covenant of good faith and fair dealing.

In response to plaintiffs' assertions, Ford argues that it does not seek to appoint an "additional" dealership as that term is utilized in the franchise agreement and section 12–6–120(1)(h). (*See* Reply in Supp. of Mot. for Summ. J. at 2, 7–8 [filed Mar. 26, 1993] [hereinafter "Def.'s Reply"].) Rather, Ford maintains that the express terms of the franchise agreement and the Colorado statute allow Ford to establish a "replacement" dealership for the Arapahoe Road/County Line Road distribution point. (*See* Def.'s Br. at 6; Def.'s Reply at 2.) Because I conclude that no genuine issues of material fact exist concerning plaintiffs' claims and that Ford is entitled to judgment as a matter of law, I grant Ford's motion for summary judgment.

## ANALYSIS

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where there is "no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Pleadings and documentary evidence must be construed in favor of the party opposing the motion. *Hooks v. Diamond Crystal Special-*

*ty Foods, Inc.*, 997 F.2d 793, 796 (10th Cir. 1993).

When a party moves for summary judgment on an issue on which it would not bear the burden of persuasion at trial, its burden of production may be satisfied by demonstrating an absence of evidence in the record to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 321, 106 S.Ct. at 2552. Once the moving party has met its initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Id.* A triable issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990). If the nonmoving party cannot muster sufficient evidence to establish a triable issue of fact on its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

### 1. Breach of Contract

Plaintiffs argue that the franchise agreement precludes Ford's appointment of a dealership for the Arapahoe Road/County Line Road distribution point under the current unfavorable market conditions. In support of their argument, plaintiffs rely on paragraph 9(c) of the franchise agreement, entitled "Additional Dealers," which provides in part:

> The Company shall have the right to appoint *additional dealers* in Vehicles within or without the Dealer's Locality except that, if an *additional dealer* will be within the Dealer's Locality and within ten (10) miles driving distance of the Dealer's principal place of business, the Company shall not appoint the *additional dealer* unless a study made pursuant to subparagraph 9(a) reasonably demonstrates, in the Company's opinion, that such appointment is necessary to provide Vehicles with proper sales and service representation in such locality with due regard to the factors referred to above in subparagraph 9(a).

(Def.'s Br., Ex. A ¶ 9 [emphasis added].) The franchise agreement defines "dealer's

locality" as "the locality designated in writing to the Dealer by the Company from time to time as the areas of the Dealer's sales and service responsibility for Company Products." (*Id.*)

Plaintiffs maintain that Ford's decision to establish a franchise in the area near Interstate 25 and Arapahoe Road constitutes an appointment of an "additional dealer" for the purpose of paragraph 9(c). (*See* Pls.' Resp. at 26.) Because Arapahoe Ford would operate within plaintiffs' respective "dealer localities," and within ten miles of their respective places of business, plaintiffs argue that Ford was required to conduct and comply with the market study mandated by paragraph 9(c) before awarding the franchise. (*Id.*) Although Ford prepared a study suggesting that the market, in Ford's opinion, could sustain the new dealership, plaintiffs contest Ford's decision to pursue the planned expansion.

Ford does not challenge the requirements of paragraph 9(c). Rather, Ford argues that paragraph 9(d), to the exclusion of paragraph 9(c), controls the appointment of a dealership for the Arapahoe Road/County Line Road distribution point. Paragraph 9(d) of the franchise agreement, entitled "Established Dealer Points," states:

> Nothing in this paragraph 9 shall restrict the right of the Company to appoint a dealer in Vehicles as a replacement for a dealer in Vehicles, or to fill an established open point for a dealer in Vehicles, at or near a location previously approved by the Company.

(Def.'s Br., Ex. A ¶ 9.) Although the franchise agreement does not define the term "established open point," Ford contends that its decision to award a franchise to Arapahoe Ford is expressly authorized under paragraph 9(d) because it intends to appoint a replacement franchise which would operate near a previously approved location. (*See* Def.'s Br. at 5.) Because Arapahoe Ford would be located near Interstate 25 on Arapahoe Road, Ford maintains that this franchise would fill the vacancy created with respect to the Arapahoe Road/County Line Road distribution point when Grooms Automotive ceased its operations in 1990. (*See* Def.'s Br. at 6–7.)

■ In consideration of the parties' conflicting positions under the franchise agreement, it is necessary to determine which one of the two contractual provisions controls given the facts of this case. The interpretation of a written contract and the determination of whether a contract term is ambiguous are questions of law. *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1514 (D.Colo.1992), *aff'd*, 13 F.3d 366 (10th Cir.1993); *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo.1990). Absent a statement of contrary intent or the presence of an ambiguity, the court must enforce the terms of the contract according to its plain and ordinary meaning. *See Omnibank Parker Road, N.A. v. Employers Ins. of Wausau*, 961 F.2d 1521, 1523 (10th Cir.1992); *Heller v. Fire Ins. Exch.*, 800 P.2d 1006, 1009 (Colo.1990); *In re May*, 756 P.2d 362, 369 (Colo.1988).

In this case, the parties' mere disagreement with respect to the controlling contract term does not establish the existence of an ambiguity. *See Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo.1990). Because the franchise agreement is otherwise clear and unambiguous, it must be construed in accordance with the plain meaning of the contractual provisions. *See Omnibank Parker Road, N.A.*, 961 F.2d at 1523. Paragraph 9(d) expressly allows Ford to appoint a franchisee as a *replacement* for another dealer or "to fill an established open point for a dealer ... at or near a location previously approved by the Company." Paragraph 9(d) also provides that "[n]othing in this paragraph 9 shall restrict the right [of Ford]" to appoint *replacement* dealers. By its own terms, therefore, paragraph 9(d) is not limited by paragraph 9(c), which only applies to the appointment of *additional* dealerships in areas currently serviced by established Ford dealers.

Ford properly invokes paragraph 9(d) as the basis for appointing Arapahoe Ford as a franchisee to service the Arapahoe Road/County Line Road distribution point. This area constitutes an "established open point" as the term is used in paragraph 9(d)

because three Ford dealers, at different times, have operated within the same limited vicinity since 1979. In fact, Hover Ford conducted business on a site near Interstate 25 and Arapahoe Road, which is in close proximity to the location planned for Arapahoe Ford. (*See* Def.'s Statement ¶ 4 [Compl. ¶ 12].) Furthermore, Leo Payne Ford and its successor, Grooms Automotive, were located near Interstate 25 and County Line Road, which is approximately three and one-half miles from the intended location of Arapahoe Ford. (*See* Def.'s Statement ¶¶ 5–6 [Compl. ¶ 12]; Pls.' Resp., Attach. [Aff. of Philip N. Scott at 1].)

Contrary to plaintiffs' argument, the franchise agreement does not contain limitations based on current market conditions or the period of time that has elapsed since a previous dealer occupied the distribution point. (*See* Pls.' Resp. at 21.) The franchise agreement only addresses the geographical proximity of the open distribution point. (*See* Def.'s Br., Ex. A ¶ 9.) The proximity requirement of paragraph 9(d) is satisfied because Arapahoe Ford would be situated "at or near a location previously approved by [Ford]" as that term is used in the franchise agreement. Accordingly, because the franchise agreement clearly and unambiguously authorizes the appointment of a replacement dealer for the Arapahoe Road/County Line Road distribution point, Ford is entitled to summary judgment with respect to plaintiffs' claim for breach of contract.

■ Alternatively, even if I were to find that the proposed franchise constitutes an "additional dealership" for the purpose of the franchise agreement, the undisputed facts demonstrate that Ford has satisfied the requirements of paragraph 9(c). Paragraph 9(c) prohibits Ford from establishing an additional dealership without conducting a market study which "reasonably demonstrates, *in the Company's opinion,* that such appointment is necessary" to provide proper sales and service representation. (Def.'s Br., Ex. A ¶ 9[c] [emphasis added].) Paragraph 9(a) similarly provides that Ford reserves the right to determine, *"in its best judgment,"* the number and location of authorized dealerships necessary to achieve the sales and service goals of the company. (Def.'s Br., Ex. A ¶ 9[a] [emphasis added].) In making these determinations, Ford conducts market studies, "to the extent deemed adequate *by the Company,"* based on several factors including demographics, competitive representation, and sales and service requirements. (*Id.* [emphasis added].)

■ Express reservations based on one party's opinion or judgment, like contract terms requiring completion of contractual obligations to one party's satisfaction, implicate either a subjective or an objective standard for performance. If the subject matter of the contract involves questions of commercial value, operative or mechanical fitness, or quality, the objective "reasonable person" standard generally applies. *See Brant Const. Co. v. Metropolitan Water Reclamation Dist.,* 967 F.2d 244, 247 (7th Cir.1992); *Ward v. Flex–O–Tube Co.,* 194 F.2d 500, 503 (6th Cir.1952). Conversely, where the contract involves "matters of fancy, taste, sensibility and judgment," the party's reservations are assessed under a subjective standard. *See Brant Const. Co.,* 967 F.2d at 247; *Ward,* 194 F.2d at 503; *see also Forman v. Benson,* 112 Ill.App.3d 1070, 68 Ill.Dec. 629, 634, 446 N.E.2d 535, 540 (1983) (if provision was included in contract as a personal concession to one of the parties, the court should apply the subjective standard).

■ In cases implicating the subjective standard, the party reserving its rights is the "sole judge of its own satisfaction, 'without regard to the justice or reasonableness of its decision.'" *Brant Const. Co.,* 967 F.2d at 247 (citing *Beasley v. St. Mary's Hosp.,* 200 Ill.App.3d 1024, 146 Ill.Dec. 714, 719, 558 N.E.2d 677, 682 [1990]). The only limitation on contracts providing subjective standards of performance is good faith. *Coppinger v. Republic Natural Gas Co.,* 171 F.2d 4, 6 (10th Cir.1948); *Brant Const. Co.,* 967 F.2d at 247.

In this case, assuming that the "additional dealers" provision contained in paragraph 9(c) applies, Ford's reservations concerning the number and location of its dealerships are governed by the subjective standard. The express terms of the franchise agree-

ment state that these determinations rest exclusively on Ford's "opinion" or "judgment." (*See* Def.'s Br., Ex. A ¶ 9[a].) Therefore, Ford is the sole judge of its own satisfaction, without regard to the objective reasonableness of its decision, subject only to the good faith limitation. *See Brant Const. Co.*, 967 F.2d at 247. After conducting a full evidentiary hearing on this matter in the context of plaintiffs' request for injunctive relief, I concluded that the periodic market study suggested no basis for inferring bad faith on the part of Ford. (Prelim.Inj.Hr'g Partial Tr. of Proceedings at 15–18 [Dec. 8, 1992].) Accordingly, even if plaintiffs correctly argue that paragraph 9(c) controls, thus precluding the application of the "replacement dealer" provisions of paragraph 9(d), Ford is entitled to summary judgment with respect to plaintiffs' claim for breach of contract.

### 2. *Colo.Rev.Stat. § 12–6–120(1)(h)*

█ Plaintiffs also claim that the intended appointment of Arapahoe Ford violates the Colorado Automobile Dealers Act, Colo.Rev. Stat. §§ 12–6–101 to –303 (1991 Repl.Vol. & 1993 Cum.Supp.). Specifically, plaintiffs invoke section 12–6–120(1)(h), which prohibits an automobile manufacturer from:

> [Establishing] an *additional franchise* for the same line-make in a community where the same line-make is presently being served by an existing motor vehicle dealer if such *addition* would be inequitable to the existing dealer, but the sales and service needs of the public shall be given due consideration in determining the equities of the existing dealer.

Colo.Rev.Stat. § 12–6–120(1)(h) (emphasis added). The statute imposes criminal penalties if any person "willfully violates" its provisions. Colo.Rev.Stat. § 12–6–121. In addition, the statute provides a civil enforcement provision and allows injured dealers to recover attorney fees. Colo.Rev.Stat. § 12–6–122(3).

The Colorado statute is not applicable to the facts of this case. The statute, by its own terms, applies only where manufacturers intend to establish *additional* dealerships. Significantly, unlike similar dealer-protection statutes adopted by other states, the Colorado law contains no references to the appointment of replacement dealerships, specific geographical limitations, or the amount of time that has passed since a previous dealership ceased its operations. *See, e.g.,* Cal.Veh. Code Ann. § 3062(d) (West 1987) (reopening of a dealership that has not been in operation for one year or more shall be deemed the establishment of an additional motor vehicle dealership); Ill.Ann.Stat. ch. 815, para. 710/4(e)(8)(B) (Smith–Hurd 1993) (appointment of successor dealer at same location as predecessor, or within two miles of predecessor's location, shall not be construed as establishment of additional franchise); Mich. Comp.Laws Ann. § 445.1576(4) (West 1993) (notice and hearing provisions inapplicable where new franchise replaces a dealership closed within preceding year and new franchise location is within two miles of previous dealership); Mass.Gen.Laws Ann. ch. 93B, § 4(3)(*l*) (West 1993) (appointment of successor dealership at same location, or within two miles of previous dealer, within one year of time previous dealer ceased operations, shall not be construed as establishment of additional franchise); N.C.Gen.Stat. § 20–305(5)(a)(2) (1993) (notice and hearing provisions inapplicable where proposed additional franchise would be located at or within two miles of a former franchisee which ceased operating within previous two years). If the Colorado General Assembly intended the "additional dealer" statute to apply in situations involving replacement dealerships, it could have drafted the statute accordingly.

Although the statute does not define the term "additional franchise," the appointment of Arapahoe Ford to service the Arapahoe Road/County Line Road distribution point does not constitute the establishment of an "additional" dealership for the purpose of section 12–6–120(1)(h). Rather, as addressed in the context of plaintiffs' claim under the franchise agreement, Ford intends to appoint Arapahoe Ford as a replacement dealership for a previously established distribution point. Ford's proposal would simply maintain the same number of Ford dealerships authorized in the southeast Denver metropolitan area prior to this dispute. Accordingly,

Ford is entitled to summary judgment with respect to plaintiffs' claim under the additional dealership provision of section 12–6–120(1)(h).

Furthermore, even assuming that section 12–6–120(1)(h) applies to the facts of this case, I cannot enforce the statute because its provisions are unconstitutionally vague.[2] I reach this conclusion under the deferential vagueness test articulated by the Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), and adopted by the Colorado Supreme Court in *Parrish v. Lamm,* 758 P.2d 1356 (Colo.1988). The relaxed vagueness test applies where, as here, the statute under scrutiny constitutes an economic regulation, provides for civil enforcement, imposes relatively minor criminal penalties using a scienter requirement, and does not infringe on constitutionally protected rights. *See Flipside,* 455 U.S. at 498–501, 102 S.Ct. at 1193–94; *Parrish,* 758 P.2d at 1367 (reviewing statutory exemption concerning waivers of certain patient fees made for "charitable purposes"). In order to successfully challenge a statute on vagueness grounds, the complaining party must prove that the statute fails to provide fair warning of the prohibited conduct. *See Flipside,* 455 U.S. at 497, 102 S.Ct. at 1192.

Although I recognize that statutory terms need not be defined with mathematical precision in order to pass constitutional muster, *Parrish,* 758 P.2d at 1368, I conclude that the Colorado statute at issue in this case provides no reasonable standards for enforcement. Specifically, the statute provides no guidance for determining when the addition of a new franchise by a manufacturer "would be inequitable to the existing dealer." *See* Colo.Rev.Stat. § 12–6–120(1)(h). Although statutory provisions "must be sufficiently general to address the problem under varied circumstances and during changing times," *Parrish,* 758 P.2d at 1368, the "additional franchise" statute transcends any permissible generality.

In *General Motors Corp. v. Blevins,* 144 F.Supp. 381 (D.Colo.1956), the court reached the same conclusion with respect to the statutory predecessor to section 12–6–120(1)(h). The former statute imposed criminal penalties on automobile manufacturers for terminating or failing to renew franchise agreements "unfairly, without due regard to the equities of said dealer and without just provocation." Colo.Rev.Stat. § 13–11–14(10)(c) (1955). In concluding that the previous statute was void for vagueness, the *Blevins* court observed that the ambiguous terms set forth in the franchise cancellation provision involved "so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result." *Blevins,* 144 F.Supp. at 396 (citation omitted); *but see E.L. Bowen & Co. v. American Motor Sales Corp.,* 153 F.Supp. 42, 45–46 (E.D.Va.1957) (upholding nearly identical statutory language because these terms "were apparently designed to permit evidence relating to the course of dealings, the nature of the business, the custom of the trade, the details leading up to a failure to renew the franchise," and other factors).

Notwithstanding the changes in the statutory language made by the Colorado General Assembly since 1955, the additional franchise provision fails to include "an ascertainable standard of guilt" under which the court may judge the actions of manufacturers. *See Blevins,* 144 F.Supp. at 395. Penalties simply cannot be imposed for violating a standard with a meaning dependent upon surmise or conjecture. *Trail Ridge Ford, Inc. v. Colorado Dealer Licensing Bd.,* 190 Colo. 82, 543 P.2d 1245, 1246 (1975) (striking down on vagueness grounds a statute permitting the revocation of a used motor vehicle dealer's license for "unconscionable" business practices). Accordingly, in its present form, the statute is unconstitutionally vague because persons of common intelligence must guess at the meaning of the term prohibiting the addition of a franchise if it "would be inequitable to the existing dealer." *See Peo-*

2. Pursuant to D.Colo.R. 24.1(B), Ford notified the Colorado Attorney General of its constitutional challenge to Colo.Rev.Stat. § 12–6–120(1)(h). (*See* Notification of Claim of Unconstitutionality [filed Dec. 4, 1992].) The attorney general declined to intervene in this matter.

*ple v. Beruman,* 638 P.2d 789, 792 (Colo. 1982) (citing *inter alia Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 [1974]); *LDS, Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490, 792 (1979) (real estate licensing statute held unconstitutionally vague because the terms "reputation" and "unethical practices" provided no fair warning concerning prohibited conduct).

### 3. Breach of Covenant of Good Faith and Fair Dealing

As an alternative means of seeking contract damages, plaintiffs assert that the intended appointment of Arapahoe Ford, "in violation of the Franchise Agreement and Colorado law," constitutes a breach of the covenant of good faith and fair dealing. (Am. Compl. ¶¶ 35–39.)[3] Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *Wheeler v. Reese,* 835 P.2d 572, 578 (Colo.Ct.App.1992) (citing *Surdyka v. DeWitt,* 784 P.2d 819 [Colo.Ct.App. 1989]). The implied duty of good faith and fair dealing does not inject substantive terms into the parties' contract. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1362 (Colo.Ct.App.1994) (citation omitted). Rather, the duty requires only that the parties perform in good faith the obligations imposed by their agreement. *Id.* If a party breaches the implied covenant of good faith and fair dealing, "the result is merely a breach of contract with standard [contract] remedies." *Wheeler,* 835 P.2d at 578; *see Duffield v. First Interstate Bank of Denver, N.A.,* 13 F.3d 1403, 1406 (10th Cir. 1993) (implied covenant of good faith and fair dealing exists even where contract terms are unambiguous).

As previously discussed in the context of plaintiffs' claim for breach of contract, the undisputed facts suggest no basis for inferring bad faith on the part of Ford. To the contrary, Ford entered its letter of intent with Arapahoe Ford pursuant to the express provisions of paragraph 9(d) concerning the appointment of replacement dealerships in locations previously approved by Ford. In addition, the market study and Ford's reservations, which were based solely on Ford's "opinion" or "judgment," cannot support a claim for breach of the duty of good faith and fair dealing. Plaintiffs are not strangers to the business world and had a full opportunity to review the contract before accepting its terms. *See Lowell Staats Mining Co. v. Pioneer Uravan, Inc.,* 596 F.Supp. 1428, 1430 (D.Colo.1984) (court should not rewrite express terms of contract merely because of contrary assertions of party to the agreement). Accordingly, Ford is entitled to summary judgment with respect to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### 4. Conclusion

Based on the foregoing reasons and conclusions, it is therefore

ORDERED that Ford's motion for summary judgment is GRANTED.

---

3. Breach of the covenant of good faith and fair dealing does not give rise to an independent tort claim except in cases implicating parties' rights and obligations under insurance agreements.

*See, e.g., Colorado Interstate Gas Co. v. Chemco, Inc.,* 833 P.2d 786, 792 (Colo.Ct.App.1991), *aff'd,* 854 P.2d 1232 (Colo.1993).